## PEDERSEN v. DELAWARE, L. & W. R. R.

(Circuit Court, E. D. Pennsylvania. January 18, 1911.)

### No. 1,068.

1. COMMERCE (§ 5*)—INJURIES TO SERVANT—RAILROADS—EMPLOYER'S LIABILITY ACT—CAUSE OF ACTION—REQUISITES.

Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), provides that every common carrier by railroad while engaged in commerce between any of the several states or territories shall be liable to any person injured while employed by such carrier in such commerce, if such injury results in whole or in part from the negligence of any of the carrier's officers, agents, or employés or by reason of any defect or insufficiency due to its negligence in its cars, engines, etc. *Held* that, in order to establish a cause of action under such act, the offending carrier at the time of the injury must be engaged in interstate commerce and the injury must be suffered by the employé while employed by such carrier in such commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 5.*]

2. COMMERCE (§ 27*)—INJURIES TO SERVANT—RAILROAD EMPLOYÉ—EMPLOYER'S LIABILITY ACT.

Defendant railroad company engaged in interstate and intrastate business at the time of plaintiff's injury was building an additional track near Hoboken, part of which was laid on a bridge. Plaintiff, an employé engaged in the bridge construction, was injured while carrying material from one part of the work to another by a local train running between two points in New Jersey. *Held*, that the injury was inflicted by the carrier as the result of the operation of a train engaged wholly in intrastate business, and plaintiff could not recover under Federal Employer's Liability Act April 22, 1908. c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), imposing a liability on carriers engaged in interstate business for injuries to employés while similarly engaged.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*]

At Law. Action by Martin Pedersen against the Delaware, Lackawanna & Western Railroad to recover for injuries to plaintiff while in defendant's employ under Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171). On motion by defendant for judgment notwithstanding a verdict for plaintiff. Granted.

Bamberger, Levi & Mandel, for plaintiff.

James F. Campbell, for defendant.

J. B. McPHERSON, District Judge. The defendant is a common carrier of freight and passengers by rail, and does both interstate and intrastate business. At the time of the plaintiff's injury, it was engaged in building an additional track near Hoboken, N. J. Part of this track was to be laid upon a bridge, and the plaintiff was hurt upon the uncompleted structure while carrying material from one part of the work to another. The verdict establishes the facts that the negligence of a locomotive engineer was one cause of the injury, and that the plaintiff, if negligent at all, was nevertheless entitled to recover a considerable sum. The new track when finished was intended for use both in local business and in commerce between the states, but the train by which the injury was inflicted was a purely local train running between two points in the state of New Jersey. The suit is brought under Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), and the question now to be decided is whether that statute affords any relief for an injury under the foregoing facts. If the plaintiff has a remedy in the state courts, it will not be affected by an adverse decision.

In my opinion the question must be answered in the negative. The act of 1908 attempted to regulate the subject of employer's liability, but was found to be fatally defective (Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297); the majority of the Supreme Court agreeing that the act was unconstitutional because it undertook to regulate traffic and other matters within the state, and that these unconstitutional regulations could not be separated from the rest of the statute. The principal dissenting opinion was written by Mr. Justice Moody; but he conceded that, if the true interpretation of the statute embraced employés who were engaged in work that had no relation to interstate commerce, Congress had overstepped its power. The whole court were agreed upon this, he said; and the principal ground of his dissent is that the statute properly interpreted afforded a remedy (207 U. S. 519, 28 Sup. Ct. 153 [52 L. Ed. 297]) "only to the employés of foreign, interstate, and territorial carriers who are themselves engaged in some capacity in such commerce in some of its manifold aspects." Mr. Justice Harlan and Mr. Justice McKenna declared (207 U. S. 540, 28 Sup. Ct. 162 [52 L. Ed. 297]) that:

"The act reasonably and properly interpreted applies, and should be interpreted as intended by Congress to apply, only to cases of interstate commerce and to employés who, at the time of the particular wrong or injury complained of, are engaged in such commerce, and not to domestic commerce or commerce completely internal to the state in which the wrong or injury occurred."

And Mr. Justice Holmes stated his view to be (207 U. S. 541, 28 Sup. Ct. 163 [52 L. Ed. 297]) that:

"The phrase 'every common carrier engaged in trade or commerce' may be construed to mean 'while engaged in trade or commerce' without violence to the habits of English speech, and to govern all that follows."

While therefore the court was not united upon the proper construction of the act, it was united upon the proposition that, if the construction announced by the majority was correct, and if the act did apply to all common carriers whose business was interstate commerce in whole or in part, without regard to the nature of the business that was being done at the time of the injury complained of, the legislation would necessarily include intrastate business and would therefore transcend the power of Congress.

This authoritative interpretation must have been influential in determining the scope of the act of 1908; and indeed it is well known that the act was passed for the express purpose of meeting the foregoing decision. The first section bears evident signs of this purpose:

"That every common carrier by railroad, while engaging in commerce between any of the several states or territories, etc., * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce or in case of the death of such employé, etc., * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employés of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, etc. * * * "

Under this section the new remedy—which, being in derogation of the common law, is to be confined to its plain meaning—is only to be available when two facts appear: First, the offending carrier must at the time of the injury be "engaging in commerce between any of the several states, etc."; and, second, the injury must be suffered by the employé "while he is employed by such carrier in such commerce." Both these facts must be present or the act does not apply—the carrier must be actually engaging in interstate commerce, and the employé must also be taking part therein. If therefore the business being done by the carrier is purely intrastate, and in the course of such business it injures an employé, the act does not apply. Neither does it apply, although the business being done by the carrier is commerce between the states, if the injured employé is engaged in work that does not properly belong to such commerce. But the act apparently does not require that the carrier and the injured employé should both be engaged in the same act of interstate business. Commerce between the states has many divisions and subdivisions, and, if the carrier while engaged in doing one kind of interstate work should injure an employé who is engaged in doing another kind of such work, the remedy provided by the act appears to be available. Difficult questions will no doubt arise in the effort to determine whether the work being done by the employé can properly be regarded as interstate commerce, and also in the effort to determine whether the carrier is also engaged in such commerce; but these questions must be met as they arise, and be decided on the circumstances presented from time to time. This much at least seems clear: The tests to be applied in determining

whether a given case falls within the statute have been laid down by Congress in language that is not ambiguous, and this language declares that a right of action does not arise unless the employé be actually engaged in interstate commerce at the time of his injury, and unless also the injury be inflicted while the carrier is conducting the same kind of commerce. Applying these tests, I am of opinion that the present action cannot be maintained. Without deciding the question whether the plaintiff was engaged in interstate commerce at the time of his injury, it seems to me beyond successful dispute that the defendant did not inflict the injury in the course of such commerce. The train was a purely local train carrying passengers between two points in the state of New Jersey, and the business was wholly intrastate.

The cases upon the act of 1908 have not been numerous, and none of them I think decides the pending question distinctly, although some of them refer to it. Fulgham v. Railroad Co. (C. C.) 167 Fed. 660, is wholly concerned with the effect of the act upon state statutes dealing with the same subject, and with the question whether the right of action survived the death of the injured employé. In Watson v. Railway Co. (C. C.) 169 Fed. 942, it appeared from the complaint—which was demurred to—that the plaintiff was a fireman on a train then engaged in commerce between the states, and that while so employed he was injured by the negligence of the conductor and engineer. The court held that the act was a valid exercise of the power granted to Congress by the commerce clause, because it was confined to common carriers by rai¹ engaged in interstate commerce, and to employés while thus actually engaged. The question was also discussed whether the act applied to injuries caused by the negligence of a fellow servant who was not at the time engaged in interstate business, and the court expressed the opinion that such injuries were covered, although the point does not seem to have been involved. Taylor v. Southern Railway (C. C.) 178 Fed. 380, required the court to decide whether a bridge repairer was engaged in interstate commerce within the meaning of the act, and it was held that he was not so engaged. The injury was .caused by a defective scaffold used in the work of repair, but the question whether it was interstate commerce to erect the scaffold was not considered. In Zikos v. Railroad Co. (C. C.) 179 Fed. 893—which also arose upon demurrer to a complaint—it was charged that the injury was sustained while the plaintiff, a repairman upon the defendant's track, was driving a spike. It was averred that the spike was worn out and defective, and that this defect was known to the defendant. Upon this branch of the case the only question considered was whether the plaintiff himself was engaged in interstate commerce. The court held that he was, and gave the following reasons for this conclusion:

"But the track of a railroad company engaged both in interstate and intrastate commerce is, while essential to the latter, indispensable to the former. It is equally important that it be kept in repair. Where the traffic itself is not in fact interstate, although upon a railroad engaged in commerce between the states, such as trains devoted entirely to local business and wholly within the boundaries of a state, a different case is presented. There it is possible to identify what is and what is not interstate; but where, as in this case, a road is admittedly engaged in both, it becomes impossible to say that

particular work done results directly for the benefit of one more than the other. Manifestly it is for the accommodation of both. To hold, then, that a workman engaged in repairs upon the track of such a carrier is not furthering interstate commerce would be to deny the power to control an indispensable instrument for commercial intercourse between the states—to deny the power of Congress over interstate commerce—but that the power extends to the control of those instrumentalities through which such commerce is carried on is not an open question. Having reference to that phase of the subject, the Supreme Court has said:

" 'That assumption is this: That commerce, in the constitutional sense, only embraces shipment in a technical sense, and does not, therefore, extend to carriers engaged in interstate commerce, certainly in so far as so engaged, and the instrumentalities by which such commerce is carried on—a doctrine the unsoundness of which has been apparent ever since the decision in Gibbons v. Ogden, 9 Wheat. 1 (6 L. Ed. 23), and which has not since been open to question.' Interstate Commerce Commission v. Illinois Central Railroad Co., 215 U. S. 452, 30 Sup. Ct. 155, 161, 54 L. Ed. 280.

" 'The power also embraces within its control all the instrumentalities by which that commerce may be carried on and the means by which it may be aided and encouraged.' Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 204, 5 Sup. Ct. 826, 828, 29 L. Ed. 158.

" 'Commerce is a term of the largest import. * * * The power to regulate it embraces all the instruments by which said commerce may be conducted.' Welton v. State of Missouri, 91 U. S. 275, 280, 23 L. Ed. 347.

"No doubt there may be situations, indeed we have the highest authority for it (Employer's Liability Cases, supra, 207 U. S. 495, 28 Sup. Ct. 141, 52 L. Ed. 297), when instrumentalities that may be used for interstate or intrastate traffic, or both, but which at the time are not being used for either, as when engines or cars are undergoing repair, or in cases of clerical work when the acts or things done are not physically or otherwise directly connected with the moving of traffic, where there could be no ground for claiming liability under the act of Congress, even though the carrier in fact be engaged in interstate as well as local traffic. But where the employment necessarily and directly contributes to the more extended use and without which interstate traffic could not be carried on at all, no reason appears for denying the power over the one, although it may indirectly contribute to the other. The particular question is an apt illustration of the intricacies to which our dual system of government often leads; but the intricacy is but an incident, and it can neither defeat nor impair the power of Congress over interstate commerce. Since the track, in the nature of things, must be maintained for commerce between the states, the work bestowed upon it inures to the benefit of such commerce. It is therefore subject to federal control, even though it may contribute to carriage wholly within the state. Being inseparable, yet interstate commerce inherently abiding in the thing to be regulated, as to the track, the state jurisdiction must give way, or at least it cannot defeat the superior power of Congress over the subject-matter whenever a carrier is using the track for the double purpose."

It is apparently assumed that the railroad was engaging in interstate commerce while it was furnishing material for the repair of the track, although this question is not discussed, and indeed may not have been considered at all.

In Hoxie v. Railroad Co., 82 Conn. 352, 73 Atl. 754, the act was declared unconstitutional on grounds that are not immediately relevant. This decision is now pending before the Supreme Court of the United States. In Colasurdo v. Railway Co. (C. C.) 180 Fed. 832, 838, it appeared that the plaintiff was engaged in repairing a switch in the defendant's yards at Jersey City. While thus engaged, he was injured by the negligence of other employés on a train that had come from Somerville, N. J., to Jersey City, and was afterwards being

shifted about on the defendant's tracks. The repair of the switch was held to be interstate business, because the switch was used indifferently in both kinds of commerce. Upon the remaining question whether the railway company was engaging in interstate commerce while doing the injurious act, the court held that it was a matter of no consequence whether or not the train that struck the plaintiff was so engaged, giving as a reason:

"It is true that the act is applicable to carriers only 'while engaged' in interstate commerce, but that includes their activity when they are engaging in such commerce by their own employés. In short, if the employé was engaged in such commerce, so was the road, for the road was the master and the servant's act its act. The statute does not say that the injury must arise from an act itself done in interstate commerce, nor can I see any reason for such an implied construction."

With much respect I am unable to agree with this construction. As it seems to me, the statute does say that the injury shall arise from an act itself done in interstate commerce; for in the light of the legislative history I am unable to find a broader meaning in the words "while engaging in commerce between any of the several states, etc." A carrier is not engaging in commerce between the states while it is doing intrastate business, and I think that Congress is not attempting in the act of 1908 to regulate intrastate business by charging such business with important liabilities. For the purposes of the commerce clause, the two kinds of business are as distinct as if they were undertaken by different corporations. One corporation, the interstate carrier, might be regulated by Congress, and therefore its acts might be charged with liability. The other corporation, the intrastate carrier, would not be subject to federal control, and Congress would have no power to affix legal consequences to its acts. This would be clear enough, I think, if the two kinds of business were actually separated, and were actually performed by two corporations respectively. The fact that only one corporation actually performs them both makes it more difficult to separate the acts and to assign the proper consequences to each, but in my opinion cannot change the rules that must be applied. It is easy to depict certain anomalies and hardships that may arise. Both are probably inevitable under the dual control exercised by the state and the federal governments over the complicated business of carriers; but this dual control is a fundamental fact in the division of legislative power between these two governments, and the distinction must be observed. In the last analysis it appears to be a question of power. Can Congress regulate the intrastate business of a common carrier? If not, I do not see how it can declare that a purely intrastate act shall subject the carrier to liability solely because such act has injured a person who at the time is engaged in commerce between the states. Clearly Congress could not so declare if the injured person had suffered while he was engaged in business intrastate in character, and I cannot escape the conclusion that the carrier's liability must be determined by considering what kind of an act did the harm, and not exclusively by the occupation of the injured person. It is the doing, or the omitting to do, some act that gives rise to a cause of action, and it would certainly be an exceptional exercise

of federal power to attempt to give a right of action for a particular wrong unless Congress was also able to forbid the wrong itself. Therefore—and in this region of controversy I express my own opinion with great deference for what may well be the better opinion of others—since Congress can neither directly forbid nor regulate the purely intrastate acts of a common carrier, I believe that it cannot reach the same result indirectly by declaring that important and burdensome consequences shall follow such acts.

Without prolonging the discussion, I conclude that the plaintiff is not entitled to recover, because he was injured by an act of the defendant done in the performance of purely intrastate business, and for this reason I direct that judgment be entered in favor of the defendant notwithstanding the verdict. Exception to the plaintiff.