LAMPHERE v. OREGON R. & NAVIGATION CO. et al.

(Circuit Court, E. D. Washington, E. D.   October 13, 1911.)

No. 1,551.

1. COMMERCE (§ 27*)—FEDERAL EMPLOYER'S LIABILITY ACT—CONSTRUCTION.
    To bring an employé of a railroad company within the Employer's Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1172), which provides that "every common carrier by railroad while engaged in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," etc., the company must have been engaged in interstate commerce, and the employé at the time of injury must have been employed in such commerce.
    [Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*]

2. COMMERCE (§ 27*)—EMPLOYER'S LIABILITY ACT—EMPLOYÉ EMPLOYED IN INTERSTATE COMMERCE.
    A locomotive fireman employed by a railroad company engaged in interstate commerce while on the way from his home to a station for the purpose of taking a train to a distant point as part of a deadhead crew, there to fire an engine hauling an interstate train, is not employed in interstate commerce within the meaning of Employer's Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1172), and there can be no recovery thereunder for his death through the negligence of fellow servants.
    [Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*]

At Law. Action by P. L. Lamphere, as administrator of the estate of C. Roy Lamphere, deceased, and as the personal representative of said deceased, against the Oregon Railroad & Navigation Company and the Oregon-Washington Railroad & Navigation Company. On demurrer to complaint. Demurrer sustained.

W. H. Plummer, for plaintiff.

W. W. Cotton, Ralph E. Moody, and Samuel R. Stern, for defendants.

---

RUDKIN, District Judge. On the 1st day of December, 1910, C. Roy Lamphere, a resident of Tekoa, Wash., was in the employ of the Oregon Railroad & Navigation Company as a locomotive fireman. On the evening of that day he received orders from his superior officers to board a west-bound train at Tekoa, as a part of a deadhead crew, and to proceed thence westerly to a certain town, there to relieve an engine crew which had been constantly employed for more than 16 hours on an engine hauling an interstate train. On the way from his home to the depot at Tekoa for the purpose of taking the train as directed, Lamphere was crushed between two cars and received injuries from which he thereafter died. The present action is prosecuted by his personal representative under the employer's liability act of 1908 (35 Stat. 65) to recover damages for his death, and the sufficiency of the complaint to bring the case within the provisions of that act is challenged by demurrer.

[1] Section 1 of the act declares that.

"Every common carrier by railroad while engaged in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé to his or her personal representative," etc.

Subsequent sections abrogate or materially modify the defenses which have heretofore been available to defendants in this class of actions.

It was conceded on the argument, by counsel for both parties, that the deceased was killed through the negligence of his fellow servants, and that the complaint states no ground of recovery at common law. In view of this concession, it is perhaps unnecessary to consider that phase of the case; but, in any event, the allegations of the complaint clearly show that the deceased and the servants whose negligence caused his death were fellow servants of a common master at the time of the injury, within the rule which has long prevailed in the federal courts. Dayton Coal & Iron Co. v. Dodd (C. C. A.) 188 Fed. 597, and cases cited.

If a right of recovery exists in this case, therefore, it must exist by virtue of the above act of Congress. It will be seen at a glance that, in order to bring a case within the provisions of that act, two things must concur: First, at the time of inflicting the injury the railroad company must have been engaged in interstate commerce; and, second, at the time of receiving the injury the injured employé must have been employed by the railroad company in interstate commerce. Such is the language of the act itself, and such is the construction it must receive at the hands of the courts in order to keep it within the pale of the federal Constitution; for, whatever differences of opinion may have existed among the several judges of the Supreme Court, in the Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, they were all agreed that the power of Congress to regulate the relation of employer and employé, or of employés between themselves, under the commerce clause of the federal Constitution, is limited to employers engaged in interstate commerce and to their employés em-

ployed in such commerce. Thus in the majority opinion the present Chief Justice said:

"The act then being addressed to all common carriers engaged in interstate commerce, and imposing a liability upon them in favor of any of their employés, without qualification or restriction as to the business in which the carriers or their employés may be engaged at the time of the injury, of necessity includes subjects wholly outside of the power of Congress to regulate commerce."

Again, addressing himself to the argument that the language of the act should be restricted to railroads actually engaged in interstate commerce, and to employés actually employed in such commerce, the same learned judge said:

"So far as the face of the statute is concerned, the argument is this: That because the statute says carriers engaged in commerce between the states, etc., therefore the act should be interpreted as being exclusively applicable to the interstate commerce business and none other of such carriers, and that the words 'any employé,' as found in the statute, should be held to mean any employé when such employé is engaged only in interstate commerce. But this would require us to write into the statute words of limitation and restriction not found in it."

In his dissenting opinion Mr. Justice Moody said:

"At the threshold I may say that I agree that the Congress has not the power directly to regulate the purely internal commerce of the states, and that I understand that to be the opinion of every member of the court."

In his dissenting opinion Mr. Justice Harlan said:

"Mr. Justice McKenna and myself are of opinion that it was within the power of Congress to prescribe, as between an interstate commerce carrier and its employés, the rule of liability established by the act of June 11, 1906. But we do not concur in the interpretation of that act as given in the opinion delivered by Mr. Justice White, but think that the act, reasonably and properly interpreted, applies, and should be interpreted as intended by Congress to apply, only to cases of interstate commerce and to employés who, at the time of the particular wrong or injury complained of, are engaged in such commerce, and not to domestic commerce or commerce completely internal to the state in which the wrong or injury occurred."

In Adair v. United States, 208 U. S. 161, 177, 28 Sup. Ct. 277, 282 (52 L. Ed. 436), the court said:

"So, in reference to Employer's Liability Cases, 207 U. S. 463 [28 Sup. Ct. 141, 52 L. Ed. 297], decided at the present term. In that case the court sustained the authority of Congress, under its power to regulate interstate commerce, to prescribe the rule of liability, as between interstate carriers and its employés in such interstate commerce, in cases of personal injuries received by employés while actually engaged in such commerce. The decision on this point was placed on the ground that a rule of that character would have direct reference to the conduct of interstate commerce, and would, therefore, be within the competency of Congress to establish for commerce among the states, but not as to commerce completely internal to a state. Manifestly, any rule prescribed for the conduct of interstate commerce, in order to be within the competency of Congress under its power to regulate commerce among the states, must have some real or substantial relation to or connection with the commerce regulated."

In St. Louis, I. M. & S. Ry. Co. v. Conley, 187 Fed. 949, Judge Riner, speaking for the Circuit Court of Appeals for the Eighth Circuit, said:

"In considering the act of 1906 * * * in the Employer's Liability Cases, * * * the Supreme Court sustained the authority of Congress, under its power to regulate interstate commerce, to prescribe, the rule of liability as between interstate carriers and their employés in such interstate commerce in cases of personal injuries received by employés while actually engaged in such commerce, basing its conclusions, as we understand the case, on the ground that a rule of that character would have direct reference to the conduct of interstate commerce, and would therefore be within the power of Congress to establish. But as the act included, not only this class of employés, but all employés, many of whom were not actually engaged in the movement of interstate commerce, it was held that Congress had exceeded the power conferred upon it by the commerce clause of the Constitution. The act of 1908 provides that every common carrier by railroad, while engaged in interstate commerce, shall 'be liable in damages to any person suffering injury while he is employed by such carrier in such commerce,' or in case of the death of such employé 'resulting in whole or in part from the negligence of any of the officers, agents or employés of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharfs or other equipment.' This statute is in derogation of the common law, and it must be conceded that such statutes are to be construed strictly; but, as suggested by Chief Justice Parker in Gibson v. Jenney, 15 Mass. 205, 'they are also to be construed sensibly and with a view to the object aimed at by the Legislature.' The primary object of the act was to promote the safety of employés of railroads while actively engaged in the movement of interstate commerce, and is well calculated to subserve the interests of such commerce by affording such protection; there being, as it seems to us, a substantial connection between the object sought to be attained by the act and the means provided to accomplish that object."

While the statute is in derogation of the common law and must be strictly construed, it is nevertheless apparent that Congress intended to exert its authority over the subject-matter embraced in the act to the fullest extent, and it is the duty of the courts to bring within its protection every employé of interstate railroads who can justly be said to be employed in interstate commerce at the time of receiving an injury. But giving to the statute this broad and liberal interpretation, it is still manifest that a vast majority of the army of men employed by the interstate railroads of the country in their different departments are so remotely and indirectly connected with the movement of interstate commerce that it is without the power of the federal government to regulate their relations to their employers or to each other. Men engaged in the manufacture of ties or steel rails which may ultimately be used in the construction of interstate railroads are not employed in interstate commerce. Men employed in the building of cars or in the construction of railroads fall within the same category. It would also seem that men employed in the repair of engines or cars which have been removed from the service, or in the general maintenance or repair of railroads used indiscriminately in intrastate and interstate commerce, are not employed in interstate commerce, although there is a diversity of opinion on this question. Pederson v. Delaware, L. & W. R. Co. (C. C.) 184 Fed. 737, and cases there cited.

To hold that persons so generally employed are employed in interstate commerce would seem to be an unwarranted invasion of the police power of the state under the guise of commercial regulations. There is no real or substantial relation between such employments and

the commerce regulated. Adair v. United States, supra. As said in the Conely Case, supra, the primary object of the act was to promote the safety of employés of railroads while actively engaged in the movement of interstate commerce, and it may well be doubted whether the provisions of the act can be extended so as to include employés not so engaged. It would be unwise and impracticable to attempt in advance to draw an arbitrary line between those who are employed in interstate commerce and those who are not, as each case depends in a large measure upon its own circumstances, and such questions must be met and solved as they arise.

[2] For the purposes of this case, I deem it sufficient to say that a locomotive fireman is not, while on the way from his home to the depot, for the purpose of taking a train to a distant point, as a part of a deadhead crew, there to fire an engine hauling an interstate train, employed in interstate commerce. Indeed, he is not employed in commerce of any kind. His employment is only constructive at best, and such employment does not satisfy the requirements of this act.

The demurrer is therefore sustained, and the case will be stricken from the trial calendar, where it was placed subject to the ruling on the demurrer.