### DARR v. BALTIMORE & O. R. CO.

(District Court, D. Maryland. June 22, 1912.)

COMMERCE (§ 27*)—EMPLOYER'S LIABILITY ACT—EMPLOYÉ "ENGAGED IN INTERSTATE COMMERCE."

When an engine and tender used by defendant railroad company in hauling interstate trains between two points reached the end of their run and had been placed on a fire track as usual to await the time for starting on the return trip, plaintiff, who was employed in making running repairs, was sent to replace a bolt which had been lost from a brake shoe of the tender, and while so employed was injured through the negligence of a fellow servant. Held, that defendant was engaged in interstate commerce, and plaintiff was employed therein at the time of his injury, within the meaning of Employer's Liability Act (Act April 22, 1908, c. 149, § 1, 35 Stat. 65 [Act U. S. Comp. St. Supp. 1911, p. 1322]), and could maintain an action thereunder.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 3, pp. 2392–2394; vol. 8, pp. 7649–7651.]

At Law. Action by George H. Darr against the Baltimore & Ohio Railroad Company. On motion by defendant for new trial. Overruled.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Walter C. Capper, of Cumberland, Md., for plaintiff.

George A. Pearre, of Cumberland, Md., for defendant.

ROSE, District Judge. The plaintiff was employed by the defendant. He was injured while in its service. He brought suit under the federal Employer's Liability Act. He recovered a verdict. The defendant moves for a new trial. It says that the plaintiff was not entitled to the benefits of the act in question. His regular work was the making of what are called "running repairs." He was hurt while repairing the brake shoe of a locomotive tender or tank.

From the testimony offered on his behalf the jury were entitled to find that the locomotive and tender upon which he was working were habitually and regularly used by the defendant in interstate commerce. Their usual run carried them through the states of Maryland and West Virginia.

Upon the morning upon which the accident happened, and very shortly before its occurrence, they had brought a train from Brunswick, Md., through West Virginia to Cumberland, Md. They were later in the day to take a train back over the same route, and they did. It does not appear that in the interval they were otherwise used. Upon their arrival in Cumberland they were, as usual, run upon what is called the "fire track." The evidence as to the uses to which the locomotive and tender were put by the defendant, and the way in which they were employed on the day in question, was put in by the plaintiff. The defendant offered no evidence on the subject. A bolt had fallen out of the brake shoe on one of the wheels of the tender. As a result the brake beam hung down in dangerous proximity to the rail. The plaintiff was directed to make the necessary repairs. He found the tender on the fire track. While engaged in repairing it, he was injured as the result of the negligence of a fellow employé who had, contrary to the directions of the plaintiff and unknown to him, put the air on the brake.

The defendant says that neither it nor the plaintiff was at the time of the accident engaged in interstate commerce. It relies especially on Pedersen v. Delaware, Lackawanna & Western Railway Co., 197 Fed. 537, recently decided by the Circuit Court of Appeals for the Third Circuit, and apparently as yet unreported. That case affirms the judgment of the District Court for the Eastern District of Pennsylvania. The opinion of Judge McPherson, who heard the case below, is reported in 184 Fed. 737.

In the Pedersen Case the employé injured was engaged in constructing a track which when finished was to be used in both interstate and intrastate commerce. While in the act of obtaining some materials for this work, he crossed a track of the railroad company in use. He was struck by an intrastate train. The court held that the act applies only to those cases in which at the time of the accident both the employer and the employé are engaged in interstate commerce. Under the facts before them they thought neither were. They said the construction they put upon the act did not—

"by reason of the general character of their customary work, draw an arbitrary line and confer the benefit of the act on certain employés, such as engineers, firemen, conductors, and brakemen, and exclude others, such as bridge builders, station employés, or track laborers. On the contrary, it makes the relation of the employé's particular work to interstate transportation at the time the injury is sustained the test. This may often be a difficult subject owing to the complicated character of a railroad's business, and illustrations may be misleading. But we think reflection will make it clear that the same kind of an act may at one time be a part of interstate transportation and at another time may have nothing to do with it. If, for example, the nature of an employé's occupation is such that he is sometimes helping to move interstate trains and again is helping to move trains that are purely local, all that can be said as a general proposition is that the act of Congress protects him in one case and does not protect him in another. The power of Congress is adequate in one case and does not exist in the other. It is inevitable that each situation must be considered by itself and must be tested by the requirements prescribed by Congress."

In Colasurdo v. Central R. R. Co. of New Jersey (C. C.) 180 Fed. 832, the plaintiff was a track repairer on the Central Railroad of New Jersey. The tracks were used for both interstate and intrastate business. The injury for which the plaintiff sued was inflicted by a train which was running from one point in New Jersey to another, although at its terminus it connected with ferries over which some of its passengers went to New York. Judge Hand, while recognizing that the act required that both the carrier and the employé should at the time of the happening of the injury be engaged in interstate commerce, pointed out that:

"If the employé was engaged in such commerce so was the road, for the road was the master and the servant's act its act."

This case was carried on appeal to the Circuit Court of Appeals for the Second Circuit. That tribunal said:

"We think the statute was intended to apply to every carrier while engaged in interstate commerce, and to an employé of such carrier while so engaged, and if these conditions concur the fact that the carrier and the employé may also be engaged in intrastate commerce is immaterial. The plaintiff was repairing an interstate road over which interstate passengers and freight, and cars and engines, engaged in interstate commerce were constantly passing. This subject was carefully considered by Judge Hand upon the motion for a new trial, and we agree with him in the conclusion reached, that the action was maintainable under the act."

Judge McPherson, in the Pedersen Case, supra, expressed himself as unable to concur with this construction, and he held that in the case before him the only act in which the carrier was engaged was the running of an intrastate train. He said:

"I do not see how Congress can declare that a purely intrastate act shall subject the carrier to liability solely because such act has injured a person who at the time is engaged in commerce between the states. * * * I cannot escape the conclusion that the carrier's liability must be determined by considering what kind of act did the harm and not exclusively by the occupation of the injured person."

In the Second Employer's Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, the Supreme Court expressly decided that the fact that the negligence which caused the injury was of an employé

engaged in intrastate commerce was immaterial, "for such negligence, when operating injuriously upon an employé engaged in interstate commerce, has the same effect upon that commerce as if the negligent employé were also engaged therein."

In affirming Judge McPherson's judgment below, the Circuit Court of Appeals for the Third Circuit, of course, recognized that the decision of the Supreme Court had made the fact that the train which inflicted the injury was an intrastate one a matter of no consequence. It was of opinion that the employé himself was not engaged at the time of the accident in interstate commerce. It held that, while in one sense the employer was always and at all times engaged in interstate commerce, that was not the sense in which the words were used in the act. Being of opinion that the employé was not engaged in interstate commerce, the court had no occasion to consider whether if, in the course of his employment, he had been so engaged, the employer would as the result of that fact have also been engaged in such commerce.

The question does not appear to me to be material in the case at bar. Allusion has been made to it principally to show that it has not been overlooked.

If the locomotive and tender at the time of the happening of the accident were engaged in interstate commerce, the Pedersen Case holds that the fact that the plaintiff was a repairman does not take him out of the protection of the act. Were the locomotive and tender so employed?

In Walsh v. New York, New Haven & Hartford Railway Co., one of the Second Employer's Liability Cases, supra, the plaintiff was injured while replacing the drawbar of a car. The statement of facts contains no further information. It may be gathered, however, from some of the statements in the arguments of counsel, that perhaps the car in question contained at the time perishable freight brought from outside the state in which the accident happened. It was contended for the railroad company that it bore the same relation to interstate commerce it would have had had it been in the repair shop awaiting repairs. The Supreme Court, however, held the carrier liable under the act.

Doubtless in the administration of this act it will be necessary often to draw some very fine distinctions. It does not seem to me, however, that the line can be drawn between replacing a drawbar of a car and putting back a bolt into the brake shoe of a tender. Nor do I think it can be drawn between a fire track and another kind of yard or terminal track.

It has been suggested that the special circumstances to which counsel in the argument before the Supreme Court alluded with reference to the car in the Walsh Case differentiate it from the locomotive in this. It must be borne in mind, however, that the Supreme Court itself did not attach sufficient significance to those special circumstances to mention them.

In this case the engine was at the time of the accident habitually used in interstate commerce, and, apparently, from the testimony, in no other kind of commerce. It was not withdrawn from service.

Judge Rudkin suggests, in Lamphere v. Oregon R. R. & Navigation Co. (C. C.) 193 Fed. 248, that among the railroad employés not protected by the act are those engaged in the repair of engines and cars which have been removed from the service.

In this case no such removal has taken place. The engine came in from its interstate commerce run as usual, and apparently went out as usual. The repairs which the plaintiff was making to it were of the ordinary trivial kind which must be, and habitually are, made from day to day without in any wise interfering with the ordinary and profitable use of the equipment. At the time of the accident I am persuaded the locomotive and tender were "instruments of interstate commerce" as those words are used by the Supreme Court. A very slight change of the facts might doubtless have taken the plaintiff out of the protection of the act.

In addition to the cases already cited, reference may be had to Taylor v. Southern R. R. Co. (C. C.) 178 Fed. 380; Zikos v. Oregon R. R. & Navigation Co. (C. C.) 179 Fed. 893; Van Brimmer v. Texas & Pacific R. R. Co. (C. C.) 190 Fed. 394; Behrens v. Illinois Central R. R. Co. (D. C.) 192 Fed. 581. The last two illustrate how radical a difference there may be in the construction put upon this act by different judges.

In consequence of what has been said, the defendant's motion for a new trial must necessarily be overruled.