[No. 10684.   Department Two.   March 21, 1913.]

M. P. Horton, *Appellant*, v. Oregon-Washington Railroad
and Navigation Company, *Respondent*.[1]

Commerce—Employers' Liability—Injury to Servants Employed
in Interstate Commerce—Statutes—Construction. Since the first
Federal employers' liability act, 34 Stats. at L., p. 232, was held un-
constitutional for want of power in congress to legislate with refer-
ence to the liability of common carriers to employees not engaged
in interstate commerce, the second employers' liability act, 35 Stats.
at L., p. 65, providing that common carriers engaged in interstate
commerce shall be liable to "any person suffering injury while he
is employed by such carrier in such commerce," must be construed
as intended to include every person who could be so included within
the purview of the constitutional power.

Same—Liability to Servants Employed in Interstate Commerce
—Who Are. One employed to operate a pumping plant for the
purpose of supplying water to locomotives used indiscriminately by
a railroad company in interstate and intrastate commerce, is within
the purview of the second Federal employers' liability act, render-
ing the company liable to "any person suffering injury while he
is employed by such carrier in such commerce," and such pumper was
so employed at the time of his death, where he was at the time
going to his work on a "speeder" over the company's tracks.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered May 31, 1912, upon sus-
taining a demurrer to the complaint, dismissing an action
for personal injuries sustained by an employee of an inter-
state railroad. Reversed.

*W. H. Plummer* and *Henry Jackson Darby*, for appellant.

*Arthur C. Spencer* and *Hamblen & Gilbert*, for respond-
ent.

Ellis, J.—Action by the administrator of the estate of
Wilbur F. Horton, deceased, for the benefit of the surviving
widow and children of decedent, to recover damages for
wrongful death under the Federal employers' liability act.

[1]Reported in 130 Pac. 897.

The amended complaint alleged, in substance: That the defendant was a corporation engaged in interstate commerce by railroad; that the decedent was employed by the defendant as a pumper at Onyx, Idaho, and operated at that place a pumping plant for the purpose of supplying the locomotives of the defendant with water; that decedent lived two or three miles from the pumping plant, and that it was necessary for him to go to the plant daily; that for this purpose defendant furnished him with a small handcar called a "speeder;" that on October 8, 1910, while going from his home to the pumping plant and while operating the speeder on the track of the defendant, decedent was overtaken by an interstate passenger train; that decedent, upon becoming aware of the approach of the train, stopped the speeder, and for the purpose of avoiding a collision, consequent destruction of defendant's property, and probable loss of life, attempted to remove the speeder from the track; that while so doing, he was struck by the train and instantly killed; that defendant failed to exercise reasonable care to avoid the collision after becoming aware of his presence; that "the duties which said Horton performed and was required to perform both in going to and coming from his home to said water pumping plant, were acts and things incident to and made necessary in the operation of said company's trains, cars, and locomotives in the carrying on its business of interstate commerce by railroad and as an integral part thereof, and said Wilbur F. Horton was at the time of his death in the performance of said duties and in the employ of said company, and employed by it for the purpose of aiding and assisting it in the operation of its trains, cars, and locomotives, and in the carrying on of its business of interstate commerce by railroad." It was admitted that the decedent was a fellow servant of the persons operating the train. While not so alleged, it seems to be conceded that the defendant was engaged in both interstate and intrastate commerce. The trial court sustained a demurrer to the complaint upon the ground that the facts

stated were not sufficient to invoke the benefit of the employers' liability act, and dismissed the action. The plaintiff appealed.

The first section of the employers' liability act of 1908, 35 U. S. Stats. at L., p. 65, ch. 149, provides:

"That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

The sole question presented for our consideration is this: Was the decedent employed by the defendant in interstate commerce at the time of his death, so as to enable his representatives to invoke the benefit of this act? The earlier act of 1906 (34 Stats. at L., p. 232), was, in the *Employers' Liability Cases*, 207 U. S. 463, held unconstitutional as exceeding the power of Congress under the commerce clause of the constitution, in that it imposed a liability as against all common carriers engaged in interstate commerce in favor of any of their employees, without restriction and whether their employment did or did not pertain to interstate commerce. In those cases, however, all the justices concurred in recognizing the power of Congress to regulate the relation of master and servant by regulations confined to interstate commerce and services connected therewith. The act of 1908 above quoted was passed to conform to that decision, and should, therefore, be construed as including within the term,

"any person suffering injury while he is employed by such carrier in such commerce," every person who could be so included within the purview of the constitutional power. "The act meant to include everybody whom congress could include." *Colasurdo v. Central R. Co.*, 180 Fed. 832. That such was the purpose and intent of the second act seems to be assumed by the supreme court of the United States in an opinion holding the act constitutional. *Second Employers' Liability Cases*, 223 U. S. 1, 38 L. R. A. (N. S.) 44.

The inquiry is thus narrowed to the concrete question, Had Congress the constitutional power to enact a law regulating the relation between a common carrier engaged in interstate commerce and its servant who is employed in pumping water used by its engines both for interstate and intrastate commerce? If Congress had this power, then we must assume that it intended to exercise it in passing the present act. In determining the extent of the power of Congress and the consequent extent of the exercise of that power by this act, we are bound, whatever our personal views, by the decisions of the Federal courts. We are not called upon to decide whether, if an injury be inflicted by a person or instrumentality employed by the defendant in intrastate but not in interstate commerce, the act could in any event be invoked, since the case is here on demurrer and the complaint alleged that the train, and by necessary inference its crew, was employed in interstate commerce. It may be remarked in passing, however, as showing the sweepingly broad construction placed upon the act and the true criterion of the congressional power, that in the *Second Employers' Liability Cases, supra*, the supreme court expressly decided that the fact that the negligence which caused the injury was that of an employee engaged in intrastate commerce was immaterial, the true criterion being the effect of the injury upon interstate commerce, not the source of the injury.

As to the character of service in which the injured servant must be engaged in order to be subject to the congressional

power so as to enable the servant to claim the benefit of the act, the supreme court, in the cases mentioned, does not particularize, but contents itself with the broad holding that "the particulars in which those relations [of carrier—masters and employees] are regulated must have a real or substantial connection with the interstate commerce in which the carriers and their employees are engaged." In those cases, *Second Employers' Liability Cases, supra,* two of the injured employees were locomotive firemen apparently employed on interstate trains, while the third was a car-repairer engaged in replacing a draw-bar in one of the defendant's cars then in use in interstate commerce, and was killed by fellow servants pushing other cars against the one on which he was working. In each of these cases it was held that there was such a real or substantial relation to interstate commerce in the employment of the injured person as to come within the regulating power of Congress and within the protection of the act.

In *Darr v. Baltimore & O. R. Co.,* 197 Fed. 665, the plaintiff's regular work was the making of what is called "running repairs." An engine and tender used in hauling interstate trains had reached the end of their run, and were placed upon a fire track to await the time for starting upon the return trip. The plaintiff, while replacing a bolt lost from a brake shoe of the tender, was injured through the negligence of a fellow servant. It was held that he was employed by the carrier in interstate commerce and entitled to the benefit of the act.

In the foregoing instances, so far as the opinions show, the employment of the injured servant related solely to instrumentalities used in interstate commerce. There are, however, numerous cases in which it is held that, where the service of the injured servant contributed indiscriminately to both the interstate and the intrastate business of the carrier-master, the injured servant is entitled to the benefit of the act.

In *Zikos v. Oregon R. & Nav. Co.,* 179 Fed. 893, the plaintiff, a section hand, was injured while employed in repairing.

the main line of the defendant's railroad used both in inter-
state and intrastate commerce. The argument seems to have
been advanced that, because the part of the track he was re-
pairing lay wholly within the state, the plaintiff was not em-
ployed in interstate commerce. The late Judge Whitson,
holding the employers' liability act applicable, used the fol-
lowing language:

"But the track of a railroad company engaged both in
interstate and intrastate commerce is, while essential to the
latter, indispensable to the former. It is equally important
that it be kept in repair. Where the traffic itself is not in
fact interstate, although upon a railroad engaged in com-
merce between the states, such as trains devoted entirely to
local business and wholly within the boundaries of a state, a
different case is presented. There it is possible to identify
what is and what is not interstate; but where, as in this case,
a road is admittedly engaged in both, it becomes impossible
to say that particular work done results directly for the bene-
fit of one more than the other. Manifestly it is for the ac-
commodation of both. To hold, then, that a workman en-
gaged in repairs upon the track of such a carrier is not fur-
thering interstate commerce would be to deny the power to
control an indispensable instrument for commercial inter-
course between the states—to deny the power of Congress
over interstate commerce—but that the power extends to the
control of those instrumentalities, through which such com-
merce is carried on is not an open question. . . . But where
the employment necessarily and directly contributes to the
more extended use and without which interstate traffic could
not be carried on at all, no reason appears for denying the
power over the one, although it may indirectly contribute to
the other. The particular question is an apt illustration of
the intricacies to which our dual system of government often
leads; but the intricacy is but an incident, and it can neither
defeat nor impair the power of Congress over interstate com-
merce. Since the track, in the nature of things, must be
maintained for commerce between the states, the work be-
stowed upon it inures to the benefit of such commerce. It is
therefore subject to federal control, even though it may con-
tribute to carriage wholly within the state. Being insepar-
able, yet interstate commerce inherently abiding in the thing

to be regulated, as to the track, the state jurisdiction must give way, or at least it cannot defeat the superior power of Congress over the subject-matter whenever a carrier is using the track for the double purpose."

In *Colasurdo v. Central R. Co.*, 180 Fed. 832, plaintiff, a railroad trackman, was assisting in the repair of a switch in a railroad yard at night, the switch being used indifferently for both kinds of commerce, when he was struck and injured by certain cars. The court, holding that he was within the protection of the act, said:

"The track is none the less used for interstate commerce, because it is also used for intrastate commerce, and the person who repairs it is, I think, employed in each kind of commerce at the same time."

This decision was, on writ of error, affirmed by the circuit court of appeals in *Central R. Co. v. Colasurdo*, 192 Fed. 901, that court saying:

"We think the statute was intended to apply to every carrier while engaging in interstate commerce, and to an employe of such carrier while so engaged, and, if these conditions concur, the fact that the carrier and the employe may also be engaged in intrastate commerce is immaterial."

In *Behrens v. Illinois Cent. R. Co.*, 192 Fed. 581, the plaintiff's intestate was fireman of a switching crew whose duty it was to switch cars that had to move both in interstate and intrastate commerce indiscriminately. At the time of the accident, the train being moved originated within the state, and the freight carried constituted intrastate commerce. It was contended that neither the defendant nor the deceased employee was at the time engaged in interstate commerce so as to permit a recovery under the employers' liability act. The court said:

"In my opinion the construction sought to be secured by the defendant is entirely too narrow and restricted. Undoubtedly the act of Congress is in derogation of the common law; but certainly the elimination of the doctrine of fellow

servant and the modification of the doctrines of contributory negligence and assumed risk makes for the betterment of human rights as opposed to those of property, and I consider that, in the light of modern thought and opinion, the law should be as broadly and as liberally construed as possible. In this view of the case, I consider that the usual and ordinary employment of the decedent in interstate commerce, mingled though it may be with employment in commerce which is wholly intrastate, fixes his status, and fixes the status of the railroad, and the mere fact that the accident occurred while he was engaged in work on an intrastate train, rather than a few minutes earlier or later, when he might have been engaged on an interstate train is immaterial. If he was engaged in two occupations that are so blended as to be inseparable, and where the employe himself has no control over his own actions and cannot elect as to his employment, the court should not attempt to separate and distinguish between them."

In *Northern Pac. R. Co. v. Maerkl*, 198 Fed. 1, the plaintiff's intestate, a car repairer employed in the defendant's repair shops connected with an interstate track, was injured while engaged in repairing a car used by the defendant indiscriminately in both interstate and intrastate commerce. The circuit court of appeals, in affirming the decision of the district court that the act applied, after pointing out that the car was one of the instruments of interstate commerce, said:

"It is equally plain, we think, that those engaged in the repair of such a car are as much engaged in interstate commerce as the switchman who turns the switch that passes the car from the repair shop to the main track to resume its place in the company's system of traffic, or any of the operatives who thereafter handle it in such traffic."

See, also, *Johnson v. Great Northern R. Co.*, 178 Fed. 643; *Freeman v. Powell* (Tex. Civ. App.), 144 S. W. 1033; *Jones v. Chesapeake & O. R. Co.*, 149 Ky. 566, 149 S. W. 951.

But it is urged that, even assuming that the employment of the deceased when actually pumping water was so related to

interstate commerce as to meet the requirements of the act, still he was not so employed while going to his work. It is argued that the decedent at the time of his death was not "actually and actively engaged in interstate commerce." The word, however, used in the act itself as applied to the servant is "employed." It is somewhat difficult to see how he could have been *passively* employed, or employed at all without being *actually* employed. The act itself places no such tautological emphasis upon the word "employed." The deceased was going to the pumping station by the means supplied by the master. He was performing a necessary part of his employment in the manner contemplated by the master. The decision of the circuit court of appeals in *Lamphere v. Oregon R. & Nav. Co.*, 196 Fed. 336, reversing a contrary decision of the district court (193 Fed. 248) sustains the appellant here in every essential particular. There the decedent, a locomotive fireman, was on his way to the depot to secure a pass, board a passenger train, and go to another town and bring forward, as one of an engine crew, an interstate train. While on his way to the depot and in the yards of the defendant, he was killed by an interstate train. The court said:

"He was on the premises of the railroad company and in the discharge of his duty when he met his death, and the train which struck him and caused his death was engaged in interstate commerce, and belonged to the same railroad company. Must a fireman be actually in his place of duty on the locomotive of a train which is engaged in commerce between the states in order that he may be said to be employed in interstate commerce? If he is commanded to step down from his train and proceed across the track and take his place on another train engaged in interstate commerce and he is injured while on the way, will it be said that he was not employed in interstate commerce when he received the injury? The case supposed is substantially the case which is now before the court."

Nor can we see any real distinction between the case quoted and the one before us.

The decisions mainly relied upon by the respondent, as generally combatting the doctrine sustained in all of the foregoing citations, are *Pedersen v. Delaware, L. & W. R. R.*, 184 Fed. 737, and *Tsmura v. Great Northern R. Co.*, 58 Wash. 316, 108 Pac. 774. The *Pedersen* case is clearly out of harmony with the principles announced in all of the foregoing decisions. In the *Lamphere* case, *supra*, after citing the *Zikos* case, the *Colasurdo* case, the *Behrens* case, and others, the court, referring to the *Pedersen* case, said:

"The decision in that case runs counter to the cases above cited, and we think it is also opposed to the doctrine of the recent decision of the supreme court in *Mondou v. New York, N. H. & H. R. Co.*, 223 U. S. 1."

In our own decision in *Tsmura v. Great Northern R. Co.*, we did not have the advantage of the foregoing authorities, which it will be noted are all recent. Moreover, as we there said:

"It is not shown whether the rails were old or new, where they came from, where they were to be taken, or where the car was to go when loaded."

In so far, however, as that case may be construed as running counter to the foregoing decisions, we are constrained by the overwhelming weight of those authorities to overrule it.

Tested by the criterion laid down in the *Second Employers' Liability Cases*, *supra*, and exemplified in the foregoing decisions, namely, by the effect of the injury upon interstate commerce, it seems to us too plain for cavil that the deceased when killed was employed by the carrier in such commerce, within the meaning of the act. Was the relation of his employment to interstate commerce such that an injury to him tended to delay or hinder the movement of trains engaged in such commerce? There is but one answer to the question. Water to supply the engines pulling such trains had to be pumped as a necessary incident to the movement of trains. If, when he was killed, his place had not been supplied by another, the movement of trains engaged in interstate com-

merce conducted by the master, as well as the local trains, must have ceased altogether. This demonstrates the "real or substantial" connection of his employment with such commerce. There can be no possible distinction in the relation to interstate commerce between the employment of the fireman who stokes the engine hauling the train so engaged and that of the man who pumps the water for the same engine. The engine would not run without the service of either. If there is a distinction it is too fine-spun and diaphanous for ordinary perception. To hold that there is any material distinction would be as unjust as artificial. The pumper's relation to actual transportation of interstate freight and passengers is much more direct and intimate than that of a car repairer or repairer of an engine tender who bestows his labor on instrumentalities while they are, so to speak, temporarily out of commission. To allow a recovery to these, and not to the pumper supplying the water for motive power in actual transportation, would smack of caprice. The demurrer to the amended complaint should have been overruled.

The judgment is reversed, and the cause is remanded for further proceeding in accordance with this opinion.

CROW, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.