(No. 14298.—Appellate Court reversed; circuit court affirmed.)
GORDON A. RAMSAY, Admr. Appellant, *vs.* THE BALTIMORE
AND OHIO RAILROAD COMPANY, Appellee.

*Opinion filed December 22, 1921—Rehearing denied Feb. 10, 1922.*

NEGLIGENCE—*when a railroad employee is injured in course of employment within meaning of Federal Employers' Liability act.* A railroad employee whose duties are to repair and oil cars in the company's yards just outside Illinois, and who is killed in a collision between one of the company's switch engines and a hand-car furnished by the company on which the deceased was riding on his way back from work to his home within the State, is in the interstate employ of the company at the time of his death, where it was the custom of the employees to travel to and from work by means of the hand-car, which was under the control of the company's foreman.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

DAVID K. TONE, and HENRY POLLENZ, for appellant.

JAMES M. SHEEAN, and CHARLES D. CLARK, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted, pursuant to a certificate of importance, to review the judgment of the Appellate Court for the First District reversing as a matter of law the judgment of the circuit court of Cook county awarding damages in the sum of $3000 against appellee and in favor of appellant in an action to recover damages, under the Federal Employers' Liability act, on account of the death of Gust Kosivos, caused by the negligence of appellee November 15, 1917.

The sole question presented for review is, Was deceased employed by appellee in interstate commerce at the time of the injury which caused his death? The evidence shows that he was one of a gang of four oilers working under a foreman for appellee in its Wolf Lake yard, in the State of Indiana. This yard was known as the receiving yard, where cars from western roads were received, oiled and then switched to another yard, where they were put into trains for the east. Deceased and his fellow-workmen lived in a shanty owned by appellee and located in South Chicago, in this State. The four men, with their foreman, were accustomed to ride from South Chicago to the Wolf Lake yard and return on a hand-car provided by appellee. The four workmen pumped the car and the foreman held the brake control and directed the movement of the car. When the gang reached the Wolf Lake yard the hand-car was left on a side-track and locked with a chain and padlock. The key and the padlock were marked with the initials "B. & O." Lanterns on the hand-car were stamped "B. & O." and the oil used in the lanterns was taken from appellee's tank in the yard. The foreman kept the key and the car could not be used without his consent. During the day it was often used to bring material and spare parts from the storehouse in South Chicago to the repair tracks in the Wolf Lake yard. It seems to be conceded by appellee that the employees engaged in the repairing and oiling of cars in the Wolf Lake yard were engaged in work so closely related to interstate transportation as to be practically a part of it, but it is contended that deceased's employment ended when he left the Wolf Lake yard and that he was not in the employ of the company at the time he was killed. He was then pumping the hand-car from the Wolf Lake yard to South Chicago and was killed in a collision between the hand-car and a switch engine belonging to appellee. The hand-car was at the time in charge of a

man acting as foreman, and deceased and three others were pumping the car.

Each case must, of course, be decided in the light of the particular facts in that case, but there are many decisions of other courts which will be helpful in reaching a correct result in this case.  In *San Pedro, Los Angeles and Salt Lake Railway Co.* v. *Davide,* 210 Fed. 870, 127 C. C. A. 454, deceased was a section-hand employed by the railroad company in ballasting the main line of its road between Las Vegas and Caliente, in the State of Nevada. He lived at a camp some distance from where the work was being done.  Several hand-cars were furnished by the railroad company and were used by the men in going to and from their work.  It was held that deceased, who was injured while he was being transported on a hand-car from his place of work to the camp where he lived, was within the terms of the Federal Employers' Liability act, the court saying: "It is the well established rule that railroad employees while being carried as part of their daily service to and from their place of work are fellow-servants, and even · if there is no agreement that they shall be so carried, it is sufficient if such be the implied agreement or the regular custom of the railroad company, assented to by the employees."

In *Horton* v. *Oregon-Washington Railroad and Navigation Co.* 72 Wash. 503, 130 Pac. 897, deceased was a pumper operating a pumping plant which supplied the locomotives of the railroad company with water.  He lived between two and three miles from the pumping plant and the company furnished him a small hand-car to carry him back and forth.  On one of his trips he was killed in a collision with a passenger train, and the court held that his going back and forth was an incident to his employment in interstate commerce and that when he was killed he was still in the employ of the company, the court saying in this connection: "The deceased was going to the pumping sta-

tion by the means supplied by the master. He was performing a necessary part of his employment in the manner contemplated by the master. * * * It seems to us too plain for cavil that the deceased, when killed, was employed by the carrier in such commerce [interstate] within the meaning of the act."

In *Ewig* v. *Chicago, Milwaukee and St. Paul Railway Co.* 167 Wis. 597, 167 N. W. 442, deceased was employed as a locomotive engineer. He had completed a run in which it was stipulated that he was engaged in interstate transportation and had surrendered his engine to an engine dispatcher, whose duty it was to take it to the roundhouse. Deceased rode in the engine cab to the roundhouse yard, and when the dispatcher left the engine deceased was still in the cab. Later deceased was found twisted around the brake-beam of the tender attached to another engine. The court held that deceased was in the employ of the company at the time of the injury which resulted in his death, saying: "It is now quite well settled by Federal decisions that in leaving the carrier's yard at the close of his day's work the employee is but discharging a duty of his employment, and that if he was employed in interstate commerce while actually at work he was in legal contemplation so engaged while leaving the yard when the actual work was ended," provided he was leaving by the proper and usual way or by a way known to and expressly or tacitly permitted by the employer.

In *Louisville and Nashville Railroad Co.* v. *Walker,* 162 Ky. 209, 172 S. W. 518, a laborer was engaged in re-building a trestle. He boarded on the company's property about a mile from where he was at work and hand-cars were used to convey the men back and forth. Deceased started to his boarding place on a hand-car but on account of obstructions the car was taken from the track, and deceased, while walking to his boarding place, was killed by a company train. The court sustained a recovery under the Fed-

eral Employers' Liability act, saying: "It is a generally recognized rule that a railroad employee while being carried to and from his work on the cars of his employer is to be treated as being in the employment of the company to the same extent as if actually engaged in the work for which he is employed. * * * We therefore think there would be no doubt that if Walker, while riding on the hand-car on which he and the other men started to go, under the direction of the foreman, from his work to the boarding-cars, had been injured by the negligence of the company, he would be treated as being in the employment of the company, with the rights accorded to such employees."

In *Erie Railroad Co.* v. *Winfield*, 244 U. S. 170, 37 Sup. Ct. 556, an engineer left his engine in the usual place for the night and started to leave the yard. His route lay across some of the tracks, and while passing over one he was struck by an engine and received injuries from which he died. He had used the engine in switching both interstate and intrastate cars, and in holding that he was still engaged in interstate commerce at the time of his death the court said: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. * * * Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole."

The cases cited by appellee are so different in the facts from the case at bar that they are not controlling.

The Appellate Court found the facts the same as the jury and the trial court found them, but found, as a matter of law, that there was no evidence in the record on which the jury might reasonably base a finding that deceased was, at the time of his injury, engaged in interstate transportation or in work so closely related to it as to be practically a part of it. In this the Appellate Court was in error. While, as argued by appellee, deceased may have

gone to and from his work on foot or by street car, or in any other way he chose, the fact remains that he and his fellow-employees traveled by hand-car, and that this hand-car was furnished by appellee and was in the control of a foreman designated by appellee to direct the movements of deceased. In view of the construction given the Federal Employers' Liability act by State and Federal courts it must be held that the record contains ample evidence, standing alone and undisputed, to sustain the verdict of the jury.

The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of circuit court affirmed.*