[No. 13050.  Department One.   February 29, 1916.]

JOHN M. BOLCH, *Appellant*, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE OR ASSUMPTION OF RISKS.  A question of contributory negligence, and not assumption of risks of defective appliances or place of work, under the Federal employers' liability act, arises where a switchman rode on a flat car bending over in an insecure position to uncouple cars, when he was thrown from the car through the negligence of the switch foreman in failing to turn the switch.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.  It is for the jury to determine whether it was inherently dangerous for a switchman, in making a flying switch, to ride upon a flat car with his feet in the stirrup, and holding to a cleat, and bending over in an insecure position to uncouple the cars.

DAMAGES—PERSONAL INJURIES — PROXIMATE CAUSE — EVIDENCE — QUESTION FOR JURY.  Whether plaintiff had tuberculosis of the spine, and his fall was the predisposing cause, is a question for the jury where three of seven physicians testified that he had that disease and attributed his condition to the fall.

[1]Reported in 155 Pac. 422.

MASTER AND SERVANT—INJURIES TO SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—CONSTRUCTION. The Federal employers' liability act is remedial and is to be liberally construed as to the inclusion of its beneficiaries in order to effect its remedial purpose.

COMMERCE—"INTERSTATE COMMERCE"—QUESTION FOR JURY. Where the facts relating to the service of a railroad employee are not conceded or established by proof so conclusive that there can be no reasonable difference of opinion about them, whether he was engaged in state or interstate commerce is a question for the jury under proper instructions.

SAME—"INTERSTATE COMMERCE"—WHAT CONSTITUTES. Where, in order to move repaired empty cars from the repair track in a switch yard, it was necessary to move and replace three unrepaired cars, one of which was loaded with lumber destined to a point in another state, the movement of such loaded car by a switching crew is a service rendered in the movement of interstate commerce, within the Federal employers' liability act; since the repair and every movement of such loaded car was an incident necessary to its furtherance on its journey.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered July 9, 1915, upon the verdict of a jury rendered in favor of the defendant, in an action for personal injuries sustained by an employee in switching cars. Reversed.

*Gordon & Easterday* and *G. C. Nolte*, for appellant.

*Geo. W. Korte* and *H. S. Griggs*, for respondent.

ELLIS, J.—Action under the Federal employers' liability act to recover damages for personal injuries. Plaintiff was employed by defendant as a member of a night switching crew in its yards at Tacoma. The crew consisted of a foreman, the plaintiff and another. On a night late in August or early in September, 1913, this crew was engaged in removing from the repair tracks, located at one end of the yard, repaired empty cars, leaving on the repair tracks other cars to await repair. The repaired cars were being taken over a lead track from the repair tracks to storage tracks at the other end of the yard, there to remain till used by another switching crew in making up trains. The repair

tracks are used indiscriminately for loaded and empty cars employed in both interstate and intrastate commerce.   There are several of these repair tracks, all converging to a connection with the lead track.   At the time in question, there were on repair track No. 1 several cars, some of which had been repaired, while others had not.   Nearest the switch opening on the lead track were some ten cars which had been repaired.   Back of these were three unrepaired cars, and still back of these were other repaired cars.

For the purpose of getting out all of the repaired cars, the switching crew attached the engine to the first repaired cars and the three unrepaired cars and hauled these out onto the lead track with the intention of backing up and "kicking" the three unrepaired cars onto repair track No. 2 which was apparently empty, and then taking up the repaired cars remaining on track No. 1.   In attempting to kick the three unrepaired cars onto track No. 2, the foreman, whose duty it was to turn the switch, admittedly failed to do so.   The string of cars went back upon the track whence they came, and ran against the remaining empty cars on that track. The impact threw plaintiff from the side of a flat car on which he was riding in a leaning posture in the act of uncoupling to complete the intended kick in response to the foreman's signal.   He claims that he fell with his back across the rail of an adjoining track and was so injured as to induce tuberculosis of the spine.

There was evidence warranting the inference that when trains arrive in the railroad yard the cars are inspected and carded with their destination, for the information of the switching crews in breaking up the trains and distributing the cars.   Plaintiff testified that one of the three unrepaired cars which were being cut out was a box car loaded with dressed lumber, bearing a card giving the number of the car and its destination as Aberdeen, South Dakota.   He claims that he noticed this fact particularly because some of the lumber, by reason of the jar, broke through and pro-

truded from the end of the car, and that when the foreman came to help him up after his fall he called attention to that fact.   The foreman and the other member of the crew expressed the belief that none of the cars was loaded.   It is conceded that the defendant is a corporation engaged in interstate commerce.   The negligence alleged was the failure of the foreman to turn the switch.   Defendant, by answer, admitted the plaintiff's employment, denied negligence and set up, as affirmative defenses, contributory negligence and assumption of risk.   These were traversed by reply.   Verdict and judgment were for defendant.   Plaintiff appeals.

Appellant resolutely assails the court's instructions as erroneous.   Respondent combats this view and insists that, in any event, they were immaterial, in that (1) appellant assumed the risk; (2) there was no proof of injury.   Preliminary to a discussion of the instructions, we shall consider these claims.

Respondent argues that the appellant assumed the risk of being thrown from the flat car upon which he was riding, because he must have known that, standing with his feet in the stirrup, bending over and holding to a cleat on the floor of the car, was an insecure position.   Such was in fact his position; but a statement of the claim makes it manifest that the question was one of contributory negligence rather than assumption of risk.   Respondent cites *Seaboard Air Line R. v. Horton,* 233 U. S. 492, Ann Cas. 1915 B. 475, L. R. A. 1915 C. 1, which holds that the employers' liability act does not abrogate the defense of assumption of risk as it does that of contributory negligence, except in case of a violation of some Federal statute enacted for the protection of employees.   In that case the risk held assumed was of an obviously defective water gauge which exploded and caused the injury.   Here there was no defect in the flat car, nor in its coupling, nor in any other appliance.   Whether it was inherently dangerous to ride upon the flat car as appellant did instead of walking, as his foreman said he should have done, was.

a question for the jury. We cannot say, of riding in that position instead of walking, that, as a matter of law, the minds of reasonable men might not differ as to its imprudence. In any event, the question was one of contributory negligence, not the assumption of risk of an obviously defective appliance or place of work not attributable to negligence independently of some Federal statute, which is all of the assumption of risk as at common law left unmitigated by the employers' liability · act. This distinction is elaborately pointed out and explained in the opinion cited. See pages 501 to 504, inclusive. See, also, *Lauer v. Northern Pac. R. Co.*, 83 Wash. 465, 145 Pac. 606. The court gave correct instructions covering both assumption of risk and contributory negligence and their effect under the statute. Upon the evidence, both questions were for the jury.

As to appellant's injuries, there is no doubt that he fell by reason of the impact of the cars. The evidence, however, casts some doubt upon his claim that he fell with his back across a rail. As to his condition, three physicians who examined him prior to the trial testified that he was suffering from tuberculosis of the spine affecting two of the vertebrae, and attributed his condition to the fall as a predisposing cause. Three other physicians who examined him testified that he was suffering at the time of the trial from rheumatoid arthritis, caused by an infection from a diseased mouth and teeth, or from an old gonorrheal trouble which his personal history discloses. The general surgeon of the respondent, in response to hypothetical questions, expressed the same opinion. Whether he was in fact suffering from tuberculosis of the spine induced by the fall was a question for the jury. Where seven learned doctors cannot agree, we would hardly be warranted in saying that the minds of reasonable men may not differ as to the cause and diagnosis of the man's condition.

The court, after defining interstate commerce and intrastate commerce in general terms and telling the jury that the

appellant could not recover unless, at the time of his injury, he was employed in interstate commerce, gave an instruction as follows:

"If, on the other hand, you find that the movement of the cars at the time plaintiff was injured, was not for the purpose of furthering or aiding in the forwarding of the car or cars so loaded for a destination, outside the state on its journey towards such destination, but was merely for the purpose of moving said car or cars off one track to another in the same yard, or for the purpose of taking said car or cars out of the track on which they stood in order that the switching crew might take out other cars out of the same track, and afterwards put back the cars so loaded in to the same or another track where they would remain for the same purpose for which they were originally placed in the yard and that the real purpose of the movement of cars at that time was to enable the switching crew to keep certain empty cars then located on the repair tracks of the said company that they might transfer them to another yard of the company where they would be subject to any use to which the company might later designate them, then I instruct you that the plaintiff was not at the time engaged in interstate commerce, and that the movement of the cars in which they were engaged was not for the purpose of furthering or aiding the operations of interstate commerce, and the plaintiff cannot recover in this action for any injuries he may have received by falling from the car in the manner he alleges."

The giving of these instructions is assigned as the sole ground of error. Manifestly, the last was tantamount to an instruction that, upon the facts shown, the appellant could not recover. The history of the employers' liability act and its remedial purpose impel to the conclusion that it should be liberally construed as to the inclusion of its beneficiaries in order to effect its remedial purpose, notwithstanding the fact that it is in derogation of the common law. *Johnson v. Southern Pac. Co.*, 196 U. S. 1; *Colasurdo v. Central R. R. of New Jersey*, 180 Fed. 832; *In re Second Employers' Liability Cases*, 223 U. S. 1, 38 L. R. A. (N. S.) 44; *Horton v. Oregon-*

*Washington R. & Nav. Co.*, 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8.

When the employer is engaged in interstate commerce by railroad, the specific labor in which the employee is engaged at a given time takes its character as a part of state or interstate commerce, not from the nature of his general employment nor from the nature of the specific work, but from the relation of that work to interstate commerce. The same specific act with one set of concomitants may be a part of interstate commerce, and with another set a part of intrastate commerce. The same employee, without the slightest change in the intrinsic nature of his habitual tasks, may pass many times daily from employment in one kind of commerce to the other. *New York Cent. & H. R. R. Co. v. Carr*, 238 U. S. 260. Each case, therefore, must depend upon its peculiar facts. When these are conceded, or established by proof so conclusive that there can be no reasonable difference of opinion, the question is one for the court. When not so conceded or conclusively established, the question is one for the jury under proper instructions. *North Carolina R. Co. v. Zachary*, 232 U. S. 248, Ann Cas. 1914 C. 159; *Pennsylvania Co. v. Donat*, 239 U. S. 50.

In passing upon the sufficiency of the instructions, therefore, we must assume that one of the three unrepaired cars which were being replaced upon the repair track was loaded with lumber for South Dakota. There was competent evidence tending to establish that fact. The question of fact was for the jury. If so loaded, that fact fixed its status for the time as an interstate car. The interstate transportation, to which it was then devoted, was not ended merely because the car had become temporarily disabled and was placed upon the repair track where it was awaiting its turn for repairs. While so placed and waiting, it was still in interstate commerce. *Johnson v. Southern Pac. Co.*, 196 U. S. 1; *Great Northern R. Co. v. Otos*, 239 U. S. 349. The repairing of an interstate car, engine or tender, essential to its interstate progress, is as

much a part of interstate commerce as its subsequent progress. *Northern Pac. R. Co. v. Maerkl*, 198 Fed. 1; *Darr v. Baltimore & O. R. Co.*, 197 Fed. 665; *North Carolina R. Co. v. Zachary, supra; Walsh v. New York, N. H. & H. R. Co.*, 223 U. S. 1, 38 L. R. A. (N. S.) 44.

It was essential to its future progress that this car remain upon the repair track until repaired. Every movement of it necessary to its so remaining was an incident to its furtherance on its journey. To get out the repaired empty cars, this car had to be removed from and returned to the repair track. It is self-evident that this was as much a part of its movement in interstate commerce as was its movement onto the repair track in the first place. Though there is no case an exact parallel on the facts, there are several recent decisions of the Federal courts which we apprehend fix the controlling principle.

The Federal supreme court recently held that a brakeman on a train consisting of both interstate and intrastate cars, who was injured while on one of two intrastate cars which he was assisting in cutting out of the train to leave them on a siding in order, as the court said, that the train might proceed, was then so employed in interstate commerce that he could maintain an action under the employers' liability act. The court said:

"The scope of that statute is so broad that it covers a vast field about which there can be no discussion. But owing to the fact that, during the same day, railroad employes often and rapidly pass from one class of employment to another, the courts are constantly called upon to decide those close questions where it is difficult to define the line which divides the state from interstate business. The present case is an instance of that kind—and many arguments have been advanced by the railway company to support its contention that, as these two cars had been cut out of the interstate train and put upon a siding, it could not be said that one working thereon was employed in interstate commerce. But the matter is not to be decided by considering the physical position of the employe at the moment of injury. If he is hurt in the

course of his employment while going to a car to perform an interstate duty; or if he is injured while preparing an engine for an interstate trip he is entitled to the benefits of the Federal Act, although the accident occurred prior to the actual coupling of the engine to the interstate cars. *St. Louis &c. Ry. v. Seale*, 229 U. S. 156; *North Carolina R. R. v. Zachary*, 232 U. S. 248. This case is within the principle of those two decisions." *New York Cent. & H. R. R. Co. v. Carr*, 238 U. S. 260.

The court, after distinguishing *Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473, Ann. Cas. 1914 C. 163, to which we shall presently refer, concludes:

"Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employe is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

That case cannot, on sound principle, be distinguished from this. The compelling purpose of switching the two intrastate cars onto the side track was to leave them at their destination, not merely to let the interstate train proceed. Obviously the train could have proceeded without leaving these cars. The court emphasizes the progress of the interstate train merely to show the relation of the switching of the two intrastate cars to interstate commerce. The purpose being double, the court looked to the circumstance which touched interstate commerce. Suppose they had been interstate cars and the only interstate cars in the train, and were being left there for repairs, to be picked up by another engine when repaired. Could there be any doubt that the court would still have held that the injured brakeman was employed at the time in interstate commerce? We think not, yet such a case would be a parallel with this. In the case supposed, it matters not how they became commingled with the other cars. The point is that they had to be segregated and left for repair in aid of their function in interstate commerce.

In *Pennsylvania Co. v. Donat, supra,* the same court, on November 1, 1915, held that, where there was evidence tending to show that a yard conductor was injured while engaged with a switching crew in removing two empty cars from a private switch in order to place thereon two cars from without the state loaded with coal consigned to the owner of the track, the question whether he was engaged in interstate commerce at the time of the injury was one for the jury under proper instructions. An appeal on the ground that the trial court had refused to instruct that he was not so engaged was dismissed as frivolous.

While that case differs from this in the circumstance that the movement of the empty cars was for the purpose of placing interstate cars, the difference seems immaterial. Here the movement of the two empty cars and the loaded car was not only to get out the repaired cars, but to replace this car that it might await the repairs necessary to its interstate journey. As in the *Carr* case, the purpose being composite, we look to the factor touching interstate commerce. Obviously, but for the presence and necessity of moving this loaded car, the appellant's employment would not have been in interstate commerce. The case would have been clearly ruled by the decision of the Federal supreme court in *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473, Ann. Cas. 1914 C. 163, which is mainly relied upon by respondent. In that case a train of cars all loaded with intrastate freight was being moved from one point to another in the same state. This, of course, was held not a service in interstate commerce. It was also held that the fact that the deceased was expected, on the completion of that task, to enter another which would have been a part of interstate commerce did not alter his status at the time of the accident. In that case, however, had there been in the train a single car loaded with interstate freight a different question would have been presented and, as demonstrated in *New York Cent. & H. R. R. Co. v. Carr, supra,* the result would have been different. Even in the *Behrens* case

it is intimated that the intention of the statute is to cover every service which "isolatedly considered" touches interstate commerce.   In *St. Louis, S. F. & Tex. R. Co. v. Seale*, 229 U. S. 156, Ann. Cas. 1914 C. 156, a yard clerk, whose duty it was to check, take the numbers of and put cards on incoming cars to guide the switching crews in breaking up trains both intrastate and interstate, was killed by an engine while he was going to meet a train.   It was held that his representative was entitled to maintain an action for his death under the Federal act.   See, also, *North Carolina R. Co. v. Zachary, supra.*

The other Federal cases cited by respondent in support of the claim that the appellant was not engaged in interstate commerce are equally inapposite with the *Behrens* case. In *Heimbach v. Lehigh Valley R. Co.*, 197 Fed. 579, the car, in repairing which the plaintiff was injured, had reached the end of its run, had been unloaded and was waiting orders.   In *Feaster v. Philadelphia & R. R. Co.*, 197 Fed. 580, the plaintiff, an extra conductor, was ordered to report for work, but had not been assigned to any particular service. He was injured while riding on a light engine to report for work within the same state.   The case of *United States v. Chicago, M. & P. S. R. Co.*, 219 Fed. 632, involved the hours of service law.   The plaintiff was an employee on a work train engaged in filling a bridge on defendant's interstate line.   It was held that he was not then "engaged in the movement of interstate commerce."   The decision is doubtless sound as applied to the hours of service law, but if the action had been brought under the employers' liability act it would be in direct conflict with the decision of the Federal supreme court in *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146, Ann. Cas. 1914 C. 153.

We shall not review the many decisions of the state courts cited by respondent, since, in any event, we are bound by the Federal decisions, and especially the recent decisions of the United States supreme court upon the subject.   These seem

to us to evidence an intention so to construe the statute as to make it apply in all cases where injury occurs to an employee in connection with any movement of cars incidental to or rendered necessary by the presence on the tracks of an interstate commerce carrier of a car loaded with interstate freight between the place of its reception by the interstate carrier and the place of its destination. Measured by this rule, there can be no question that the court's instruction was erroneous.

The appellant requested an instruction as follows:

"You are instructed that if you find from the evidence that among the cars in the string that was being moved by the switching crew or train men of the defendant, at the time Bolch was injured, if he was injured, there was a box car loaded with dressed or finished lumber destined for Aberdeen, South Dakota, or some other point without the state of Washington, which car had been actually started for its destination or the lumber in which had theretofore been delivered to the defendant for transportation to Aberdeen, South Dakota, or to some other point without the state of Washington, then I charge you that the plaintiff was employed in interstate commerce at the time of receiving such injury. And, if his injury resulted in whole or in part from the negligence of any of the employees of the defendant, the defendant is liable in damages and your verdict should be for the plaintiff."

While the requested instruction would have been better had it been more circumstantial in embodying the rule which we have deduced from the authorities, it sufficiently expressed that rule as applied to the fact. It, or some other instruction involving the same thought, should have been given. The failure to give it was fatal error.

The judgment is reversed, and the cause is remanded for new trial.

Morris, C. J., Fullerton, and Chadwick, JJ., concur.