[No. 12998. Department One. October 21, 1916.]

## AL ALDREAD, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

COMMERCE — "INTERSTATE COMMERCE" — WHAT CONSTITUTES. The initial movement of a refrigerator car for icing incident to its loading and billing to a point outside the state is a service rendered in the movement of interstate commerce within the Federal employers' liability act.

MASTER AND SERVANT — INJURY TO SERVANT — NEGLIGENCE — FEDERAL LIABILITY ACT — SAFETY APPLIANCE ACT. Where an accident in interstate commerce occurred through the master's negligence, the Federal employers' liability act defines the rights of the employee and the rights of the parties depend upon it and not upon the safety appliance act.

SAME — INJURY TO SERVANT — ACTIONS — ISSUES AND PROOF — NEGLIGENCE. Upon an issue as to whether cars were in a train movement without having the air coupled as required by the safety appliance act, the absence of markers required on the rear of trains does not tend to show that it was a train movement.

SAME. Upon an allegation of negligence in releasing the air brakes on a switch engine after it had come to a stop, whereupon the momentum of the cars shoved the engine onto the plaintiff, it is inadmissible to prove a rule requiring all trains to carry markers or green flags and that flags were not displayed, since that was an independent act of negligence which in no way contributed to the injury.

SAME. Upon an issue as to whether cars were in a train movement without having the air coupled as required in the safety appliance act, it is inadmissible to prove that the company issued a train bulletin for another division after the accident requiring cars moved between certain points in such other division to be coupled with air.

[1]Reported in 160 Pac. 429.

SAME. Upon such issue it is inadmissible to prove a rule requiring "train pipes to be connected," the fact being admitted that the pipes were not connected.

SAME—ISSUES AND PROOF—OPINIONS—REBUTTAL. Upon an allegation of negligence in releasing the air brakes on a switch engine after it had come to a stop, whereupon the momentum of the cars shoved the engine onto the plaintiff, it is reversible error to allow the plaintiff in rebuttal to testify that something else might have intervened, as a leaky valve or the application of steam, to start up the engine after release of the air; since it was not within the issues, and was speculative and merely the opinion of a nonexpert; and furthermore not proper rebuttal.

Appeal from a judgment of the superior court for King county, Humphries, J., entered February 24, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a railway brakeman. Reversed.

*C. H. Winders*, for appellant.

*Griffin & Griffin*, for respondent.

CHADWICK, J.—Respondent was engaged as a brakeman in a switching crew. The crew was regularly assigned to do the switching in and between Puyallup and Sumner during the berry season. The distance between Puyallup yards and Sumner yard is about a mile. Over this intervening space, switching is done on the main track. At the time plaintiff was injured, the crew was moving two cars, a flat car loaded with wood consigned to Sumner, and a refrigerator car, with passenger equipment, which had been iced at the ice house at Puyallup and was being moved to the Fruit Growers' Association warehouse at Sumner for loading. The car was there loaded and thereafter consigned to Grand Forks, in North Dakota. The engine was backing and pulling the two cars. There was a step or footboard on the tender. Switch engines are usually so equipped for the convenience of the switchmen. The air was not coupled between the engine and the cars. The train was controlled by a direct application of the air upon the engine.

The conductor, the swing brakeman, and respondent rode on the footboard from Meeker junction to Sumner. As the train slowed down and was about to stop at the station, the conductor and the swing brakeman stepped off the footboard. Respondent says that, just as the train was about to stop, he gave the signal to the fireman to stop; that the engine did stop; that he stepped off, and instantly the engineer released the air, and the momentum of the cars was such that they struck or pushed the engine, moving it forward about three feet; that the footboard caught him on the back of the foot or ankle and doubled his leg over his foot, crushing and bruising it so that he has suffered permanent injuries. Other facts will be mentioned in our discussion of the law. The appeal is prosecuted from a verdict and judgment in favor of the respondent.

The first question is whether the Federal employers' liability act applies in this case. We have recently examined that act and reviewed the cases. The icing of the car was an initial movement incident to its loading and billing to a point outside of the state and we hold, under the authority of *Bolch v. Chicago, Milwaukee & St. Paul R. Co.*, 90 Wash. 47, 155 Pac. 422, that it was engaged in interstate commerce at the time respondent was injured.

Whatever the movement may be called, under the testimony of respondent, the question whether due and reasonable care for the safety of its employees demanded of appellant a coupling of the air is for the jury.

The most material inquiry upon the trial was whether the movement of the cars from Puyallup yards over the intervening space into Sumner yards was a train movement or a switching movement, respondent contending that, inasmuch as there were two cars and an engine moving over the track between the two yards, it was a train movement and that the cars should have been coupled with the air. To sustain his theory, respondent sought to show that the train was moved without complying with the safety appliance act. It is pos-

sible that counsel were of opinion that it was necessary to show a violation of the safety appliance act in order to avail themselves of the right to recover, notwithstanding a finding of negligence on the part of the respondent. Respondent is entitled to that benefit under our holding that appellant was engaged in interstate commerce. The employers' liability act of April 22, 1908, 35 Statutes at Large, p. 65, defines the right of the employee in such cases, and the rights of the parties depend upon it, and not on the safety appliance act.

Counsel was permitted, over the strenuous objection of counsel for appellant, to prove a rule and custom requiring all trains to carry markers or green flags upon the rear of a train, and that such markers were not displayed upon the rear car at the time respondent was hurt. While the presence of the markers might tend to prove that appellant was engaged in a train movement, the absence of such markers could have no relevancy whatever. The presence or absence of the markers had nothing to do with the accident. They are used to give notice to other trains of the movement and character of a train running with or opposite to them, to avoid collisions and to indicate rights of way. The error of the court in admitting such testimony is apparent. Its presence in the record is not accounted for upon any reasonable or legal grounds. Counsel's argument is no more than this: If markers had been displayed, it would have been a train. They were not displayed, and it was a train anyway. It neither proves nor tends to prove any fact material to the issue. Its tendency was to convict appellant of an independent act of negligence—a disregard of its rules, which in no way contributed to the injury. Subject to the well settled doctrine that notice of a defect may be proved by other accidents occurring at a given place, it has been repeatedly held that evidence of an independent act of negligence is not material or relevant. *Dickey v. Northern Pac. R. Co.*, 19 Wash. 350, 53 Pac. 347; *Henne v. Steeb Shipping Co.*, 37 Wash. 331, 79 Pac. 938. More especially when the act com-

plained of in no way contributed to the injury. 1 Greenleaf, Evidence (14th ed.), § 52.

The court permitted respondent to introduce a train bulletin, issued by the division superintendent after the accident to respondent, requiring all cars moved between Sedro Woolley and Clear Lake, Washington to be coupled with air. This seems to have been relied upon as an admission that the movement of cars along a main track constituted a train movement and not a switching movement, and to show inferentially an admission on the part of the company of a negligent practice. The admission of this testimony was error. The manner of moving trains upon another division could have no bearing on the question in this case. In *Bell v. Washington Cedar Shingle Co.*, 8 Wash. 27, 35 Pac. 405, the court cited and relied upon the case of *Columbia & Puget Sound R. Co. v. Hawthorne*, 144 U. S. 202, 207:

"The evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendants."

See, also, *Carter v. Seattle*, 21 Wash. 585, 59 Pac. 500.

Respondent was permitted, over the objection of plaintiff, to introduce a book of rules containing, among others, the following: "Train pipe must be connected to permit of operation throughout the train." This, too, was error. Granting that the inquiry, whether the movement was a train movement or switching movement, was material, the offer of the rule did not tend to prove or disprove the fact. It is admitted that the air was not coupled. The only inquiry then is, did the accident occur because the air was not coupled, not whether the rule required it to be so. To illustrate, appellant could not have offered the rule, the cars not being coupled with air, to prove that it was engaged in a switching movement, al-

though the construction put upon such rules by those who operate under them is often given great weight in determining a disputed fact. If it were admitted or were proved by independent evidence that the engine and cars made up a train within the meaning of the safety appliance act, and the order of the interstate commerce commission, the rule might then be admitted to make a *prima facie* case of negligence.

After respondent had developed his case upon the issues made by the complaint and answer, that is, that the engineer had negligently released the air at the very moment that the engine stopped, and appellant had produced a number of witnesses whose testimony tended to disprove this theory and to affirmatively show that the air had not been released at all, and further, that the air could not have been instantly released, but that the operation would require from eight to eleven seconds, respondent was put upon the stand in rebuttal. He was interrogated as follows:

"In answer to a question of Mr. Winders' you stated that it was the action of the cars in pressing and bumping against the engine that caused the tank or the footboard to back over you? . . . That that was what caused the tank to back over you—I want to ask you whether you know whether it was that or whether it was steam applied to the cylinder from the locomotive? Mr. Winders: I object to that on the ground that it is leading and suggestive. Mr. Griffin: The witness, if your honor please, should always have an opportunity to explain his answers. He has made an answer to a question which he did not thoroughly understand, and he should be given an opportunity to correct it. Mr. Winders: It is for the jury to say whether he understood it. Mr. Griffin: I call the witness' attention to that one answer and I desire the witness to have an opportunity to explain it. Mr. Winders: He said the reason he got hurt was because the engineer released the air on the engine. Mr. Griffin: We still insist that was the reason he was hurt. Mr. Winders: Then why are you trying to inject it here that it was because of something else? Q. Mr. Griffin: Was there any answer which you make to Mr. Winders' question which you wanted to correct? Mr. Winders: I object to that on the

ground it is incompetent. Mr. Winders: I object to that question, if your honor please, and there is nothing before the court. Mr. Griffin: Just explain the answer, if you wish to. A. I answered Mr. Winders' question last Friday as I understood his question. There might have been steam—the throttle might have been leaking steam, or there might have been other causes, whereas, as he released his straight air that it might have forced the engine back. I answered Mr. Winders' question the way I understood him to ask me. I could not say but what this was a defective throttle at the time, but if the engineer had held on his brakes they would not have come back."

Mr. Winders moved to strike the answer, and Mr. Griffin said: "I am perfectly willing that that portion of the answer should be stricken." While the record is confused, it is likely that the court ordered it stricken.

Mr. Griffin asked the further question: Q. "Was there any further explanations which you wish to make, Mr. Aldread?" Witness was allowed to answer over objection:

"Well, I simply want the jury to understand that I answered Mr. Winders' question last Friday as I understood his question. I made the remark that, had the engineer held on to his straight air the instant he came to this stop that these causes would not have occurred. There might have been something else happened then—there might have been a leaky throttle, or there might have been other power which would cause that engine to come back and catch me, that is all—"

Mr. Winders again moved to strike. Mr. Griffin said: "I consent that the leaky throttle may be thrown out," but followed it by the question:

"What I wanted to ask was this, if your honor please, to find out whether or not when the brake was released the engine might have been pushed ahead by reason of the throttle not having been completely shut off—by steam applied in the cylinders. Q. Mr. Griffin: Don't refer to any leaky throttle or anything of the kind, but might the train have been propelled backward by the action of steam as well as by the bump? A. Yes. Mr. Winders: I object to that on the same ground, as not any issue in this case. Mr. Griffin: It is an

issue. We allege that the train was backed up wrongfully, carelessly and negligently. The Court: I will overrule the objection and allow you an exception."

The admission of this testimony is so obviously prejudicial that it needs no discussion. But counsel insists that it was within the issues as tendered in his complaint. We are not disposed to hold that any negligence other than the misuse of the air was charged in the complaint, but if so, it was an abuse of discretion on the part of the court to receive such testimony. It was speculative. The opinion of respondent had no foundation of fact to sustain it, nor was it shown that he was capable of expressing an opinion. Furthermore, the issue had been waived if tendered. The only testimony respondent was free to offer in rebuttal was such as tended to rebut the affirmative testimony of the appellant.

For all these reasons, a new trial must be had. The issues will be greatly simplified. The only issue is whether the air was released, and if so, whether the cars would not have pushed the engine—if they did push it—if the engine and cars had been coupled with the air.

Reversed and remanded.

MOUNT and ELLIS, JJ., concur.

MORRIS, C. J., concurs in the result.