[No. 13481.   Department One.   November 22, 1916.]

WILLIAM KILLES, *Respondent*, v. GREAT NORTHERN
RAILWAY COMPANY, *Appellant*.[1]

ELECTION OF REMEDIES—MASTER AND SERVANT—ACTIONS—FEDERAL
STATUTES.   Where plaintiff sued for personal injuries under the
Federal employers' liability act, and resisted a removal of the case
to the Federal court upon his right to sue in the state court under
the Federal act, he elected as between a right of action at common
law and under the Federal act, and must abide by his election as
fixing the law of the case.

COMMERCE — INTERSTATE COMMERCE — EMPLOYMENT WITHIN—FED-
ERAL STATUTE.   The building of a scaffold upon which a workman
was to stand while painting the roof of a freight shed used in inter-
state commerce is not a service rendered in the movement of inter-
state commerce, within the Federal employers' liability act; since
it had no direct or immediate connection with interstate commerce
and was not a necessary incident in the movement of interstate
freight.

Appeal from a judgment of the superior court for King
county, Frater, J., entered January 15, 1916, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained by an employee in falling
from a scaffold.   Reversed.

*F. V. Brown* and *F. G. Dorety*, for appellant.

*Carkeek & McDonald*, for respondent.

MORRIS, C. J.—Appeal from a judgment in favor of re-
spondent upon verdict in his favor.   The action was brought
under the Federal employers' liability act, and the first ques-
tion to be determined is whether or not respondent was, at
the time of his injury, engaged in interstate commerce and,
therefore, within the act.   If he was not so engaged, then
this action must fail.

Respondent was employed by appellant as a laborer.   On
the day in question, he was directed to go down to appellant's

[1] Reported in 161 Pac. 69.

freight shed, in which interstate commerce was handled, and paint or whitewash the ceiling of the shed. For this purpose a scaffold was to be erected upon which respondent and those engaged with him were to stand while applying the paint. Arriving at the shed, respondent and two others, Wood and Casey, were directed by McGinity, the foreman in charge, to build the scaffold out of four-by-fours laid across the main rafters of the shed about thirteen feet above the floor. Upon these four-by-fours, two-by-ten planks were to be laid, but not nailed, as it would be necessary to move the planks as the work progressed. After directing them how to build the scaffold, McGinity showed them a pile of lumber out in the yard from which the necessary timber for the scaffold was to be procured. Wood, Casey and respondent thereupon proceeded to build the scaffold.

At the time of the accident, respondent was up on the scaffold putting the planks in place, and Wood and Casey were below passing them up. Wood noticed that one of the four-by-fours already in place was showing signs of breaking, and he and Casey went out to the pile of lumber and obtained another timber to place under the defective four-by-four as a brace. This was done, and while the brace was being held in place by the men below, Wood directed respondent to nail its upper end to the four-by-four. Respondent proceeded to do so, kneeling upon a plank, when the four-by-four broke and he fell to the floor. These facts will be sufficient to determine the question suggested.

Respondent, having resisted a removal of his case to the Federal courts upon his right to sue in the state court under the Federal statute, elected as between a right of action at common law and one under the Federal act and must abide by his election as fixing the law of the case. *Baird v. Northern Pac. R. Co.*, 78 Wash. 67, 138 Pac. 325.

The freight shed itself, as a storehouse and place for the handling of interstate commerce, is conceded by appellant to

14—93 WASH.

be an instrumentality made use of in interstate commerce, but it does not follow that the building of a scaffold to be used in the painting of an interstate commerce freight shed bears such a relation to the movement of interstate freight, or is such an integral or necessary part thereof, as to make such work fall within any definition or test of interstate commerce that has up to this time been announced. In *Horton v. Oregon-Washington R. & Nav. Co.*, 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8, we reviewed the cases then reported to determine a practical test to apply to cases that would fall within the act, and reached the conclusion that the employment of the injured servant must be in connection with some instrumentality used in interstate commerce, and that the relation of the employment to interstate commerce must be such that an injury to the servant tended to hinder or delay the movement of trains engaged in such commerce. We sustained the action as within the act in that case upon the theory that an employee whose duty it was to attend a pumping plant furnishing necessary water to interstate trains was employed in furthering the movement of interstate traffic as much as the fireman who stoked the engine, the switchman moving oil for use in an interstate engine, or the servant who repaired the engine or cars; and that in going to his employment by the means supplied by the master, he was under the protection of the act to the same extent as the fireman passing from one phase of his employment to another, in each of which cases the action has been sustained. *Northern Pac. R. Co. v. Maerkl*, 198 Fed. 1; *Lamphere v. Oregon R. & Nav. Co.*, 196 Fed. 336; *Montgomery v. Southern Pac. R. Co.*, 64 Ore. 597, 131 Pac. 507, 47 L. R. A. (N. S.) 13.

We again passed upon the character of employment necessary to bring the servant under the Federal act in *Bolch v. Chicago, Milwaukee & St. Paul R. Co.*, 90 Wash. 47, 155 Pac. 422, where a switchman was injured while engaged in the removal of cars from one repair track to another, and sustained the action because of testimony that one of the cars being

moved was loaded with lumber destined for transportation to the state of South Dakota. We there reasoned that the interstate transportation to which this car was then devoted was not ended merely because the car had become temporarily disabled and had been placed upon the repair track awaiting repairs. No case, either state or Federal, has gone farther in sustaining liability under the Federal act than either the Horton or the Bolch cases, but in each of those cases the work in which the servant was engaged at the time of his injuries was within the test announced in the Horton case, or, as said in *New York Cent. & H. R. Co. v. Carr*, 238 U. S. 260, at the time of the injury the employee was engaged in an act which was so directly and immediately connected with interstate commerce as substantially to form a part or a necessary incident thereto.

Adopting this liberal rule of interpretation, the facts here presented do not come within it. The building of a scaffold in a freight shed upon which a workman is to stand while painting the roof has no direct or immediate connection with interstate commerce, nor is it a necessary incident in furthering the movement of interstate freight. It may be admitted that the freight shed is an instrumentality made use of in interstate commerce, but the respondent was not at work upon the freight shed. His act was at least one step removed from any connection with interstate commerce or any of its instrumentalities, either directly or indirectly.

This view is in harmony with that expressed in *Illinois Cent. R. Co. v. Rogers*, 221 Fed. 52, where it was held that a workman engaged in cleaning stencils used in the manufacture and repair of interstate cars was not entitled to the protection of the Federal act. It is likewise sustained by *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556, L. R. A. 1916C 797. There a workman employed in the railway machine shops where repairs were made to engines operated in interstate commerce was injured while moving a heavy shop fixture used in repair work. It was held that the connection between

the fixture and interstate transportation was too remote, the only function of the fixture being to communicate power to machinery used in repairing engines, some of which were used in such transportation. So here, the only function in building this scaffold was to assist in painting a freight shed which stored interstate commerce. If moving a fixture which furnishes power to machinery used in interstate commerce is without the act, then, by the same reasoning, the building of a scaffold to be used in painting a freight shed used in interstate commerce is without the act. The *Shanks* case cites in its support *Delaware, L. & W. R. Co. v. Yurkonis*, 238 U. S. 439, in which it was held that a miner setting off a charge of dynamite for the purpose of blasting coal to be used in interstate commerce was not engaged in interstate commerce. If the mining of coal for use in interstate commerce is not an engagement in such commerce, then building a scaffold for a freight shed used in interstate commerce is not employment in such commerce.

Respondent relies upon *Columbia & P. S. R. Co. v. Sauter*, 223 Fed. 604. It there appears that the railroad company was building a trestle across Cedar river to serve as a temporary structure for passing trains engaged in interstate traffic, and as a falsework for rebuilding an old bridge. An employee was at work in making a clear space in which piles could be driven among logs and debris that had drifted against a supporting truss, when the bridge fell upon him. The court held that the employment was in interstate commerce. This case can be readily supported under all the cases. The trestle was an undoubted instrumentality of interstate commerce, and the driving of piles and the clearing of the necessary space through which they could be driven was a necessary incident in the building of the trestle. The abundant reason for this holding does not, in our judgment, support respondent's position.

*Eng v. Southern Pac. R. Co.*, 210 Fed. 92, is also relied upon. The injured workman was there employed in construct-

ing an office in a freight shed operated in connection with interstate commerce; held, the employment was in interstate commerce, since the freight shed was an instrumentality used in such commerce, and the work being done was in maintaining it in proper condition. This case would be authority for holding that painting the roof of the freight shed was employment within interstate commerce. Respondent was not so engaged. He was building a scaffold which was neither a necessary nor any part of the freight shed. To say that, while painting the roof, the workman was engaged in interstate commerce, but not so engaged while building the scaffold, is a sound distinction under the authorities which hold that a workman may often and rapidly during the same day pass from one class of employment to another. *New York Cent. & H. R. Co. v. Carr, supra.*

Many other cases are cited where workmen were injured while working upon repair shops, roundhouses, stations and outhouses, all of which were held to be instrumentalities of interstate commerce. These cases would be authority here if respondent were working upon the freight shed.

We cannot escape the conclusion that the respondent was not engaged in interstate commerce, and for this reason his action must fail.

The judgment is reversed, and the cause remanded with directions to dismiss.

MOUNT, FULLERTON, and ELLIS, JJ., concur.

CHADWICK, J., concurs in the result.