(No. 30256.—

HENRY J. McMANAMAN, Appellee, *vs.* JOHNS-MANVILLE
PRODUCTS CORPORATION, Appellant.

*Opinion filed May 20, 1948—Rehearing denied September 15, 1948.*

424

James A. Dooley, of Chicago, for appellant.

Joseph D. Ryan, and Louis P. Miller, both of Chicago, for appellee.

Per Curiam: The plaintiff, Henry J. McManaman, brought an action in the superior court of Cook County against the defendant, Johns-Manville Products Corporation, to recover damages for personal injuries sustained on May 6, 1944, while he was engaged in his duties as freight conductor for the Elgin, Joliet and Eastern Railway Company. A jury returned a verdict awarding plain-

tiff $25,000 damages and judgment was entered thereon. The jury also returned a special finding that plaintiff was not guilty of contributory negligence. The Appellate Court for the First District affirmed the judgment and the cause is now here on leave to appeal granted.

The complaint alleged that at the time of the accident, and prior thereto, both plaintiff and his employer were engaged in interstate commerce; that plaintiff, when injured, was engaged in moving, distributing and classifying certain railroad cars, and in making and breaking up trains that were moving in interstate commerce. It was further alleged that, in performance of his duties, plaintiff was riding on the south side of the lead car of a cut of freight cars which was being switched onto track 7 at defendant's premises, which track was immediately north of a building known as the "roofing building;" that in the north wall of said building was an entrance and roadway which extended across the railroad track; that while plaintiff was exercising due care, he was injured by negligent acts of defendant when a truck being driven out of the roofing building and across the tracks, struck and crushed the plaintiff against the side of the railroad car. Defendant's answer was in the nature of a general denial, and by way of additional defense alleged that at the time of the accident, the plaintiff, his employer, and the defendant, were all operating under and subject to the terms of the Workmen's Compensation Act of the State of Illinois, and by section 29 of said act (Ill. Rev. Stat. 1943, chap. 48, par. 166,) plaintiff's only remedy was against his employer for benefits according to the terms of the act.

At the close of the evidence the plaintiff filed a motion to strike this special defense on the ground that the undisputed evidence showed that all parties were engaged in interstate commerce at the time of the accident. The motion was allowed and the special defense stricken from the answer. Defendant assigns this ruling as error, con-

tending, first, that as a matter of pleading the motion to strike admitted the facts of the special defense as well pleaded, and, second, that from the facts the issue of whether the parties were engaged in interstate commerce was an issue of fact to be determined by the jury.

The only proof offered by defendant in support of its special defense was a stipulation of the parties that plaintiff, his railroad employer, and defendant were all operating under the Workmen's Compensation Act, "Except when operating in interstate commerce * * *." Such a stipulation cannot be deemed to be proof of the special defense, but is rather merely a restatement of the issue as raised by the pleadings and introduces no facts upon which the jury or the court could determine the issue. Since no proof in support of the special defense was given, the issue had no place in the case and the trial court properly allowed the motion to strike the special defense. (*Mueller v. Elm Park Hotel Co.* 391 Ill. 391.) Further we are of the opinion that there is no merit to defendant's contention that the motion to strike should be treated as a demurrer. The motion to strike was not based on the issues as formed by the pleadings, alone, but came after the proofs in support of the pleadings had been made, and was based on a failure of proof rather than the adequacy or inadequacy of the pleadings.

Relying on *Avance v. Thompson*, 387 Ill. 77, defendant next contends that the question whether or not the plaintiff was engaged in interstate commerce at the time of the accident was an issue of fact to be determined by the jury, which function was denied the jury when the trial court allowed the motion to strike the special defense. In the *Avance case* we held that where the facts are in dispute, or more than one inference can be drawn from them, the question whether the injured employee was, at the time, engaged in interstate commerce is a question for the jury. Conversely, however, we have held that where the facts

are not in dispute, and no conflicting inferences may be drawn therefrom, it is a question of law for the court whether the parties were engaged in interstate commerce. *Day* v. *Chicago and Northwestern Railway Co.* 354 Ill. 469.

The facts in the record, insofar as they relate to the issue of interstate commerce, were all introduced in evidence by the plaintiff and show that the defendant on May 6, 1944, telephoned the railroad and ordered five 80-ton boxcars from the railroad's freight yards at Waukegan, Illinois. Directions were given that these cars were to be spotted on track 7 of defendant's premises, before doors 4, 5, 7, 8 and 10. Fred Hoff, freight agent for the railroad, entered the order on a drill sheet or switching list, and, in turn, the switching crew, of which plaintiff was conductor, picked up the cars from the freight yards and took them to the defendant's plant. At the entrance of the factory the switching crew was given a complete drill sheet by defendant, which contained a list of the empty cars to be brought in, and also gave information of four loaded cars which were to be switched out of the factory's grounds to the railroad yards in Waukegan. The loaded cars were sitting on track 7, thus it was for the dual purpose of spotting the empty cars and picking up the loaded ones that the train, of which plaintiff was conductor, was proceeding at the time the accident occurred. It also appears that at the time plaintiff sustained his injuries the railroad had no recorded out-of-State destination for either the empty or loaded cars. The proof shows that, a few hours subsequent to the accident, bills of lading were received which showed the destination of the loaded cars to be to points outside the State, while four of the empty cars were ultimately loaded and dispatched into interstate commerce, the fifth being withheld because of the accident.

The foregoing facts are undisputed and in our opinion are not susceptible to conflicting inferences; the nature of the employment is, therefore, a question of law. The

plaintiff contends that all of the cars, both empty and loaded, were consigned to and became a part of·interstate commerce before the accident occurred, since the shipper must necessarily have determined the content, consignee and destination of the cars when it ordered specific type cars adapted to its immediate needs. Defendant, on the other hand, contends that the movement of the empty cars was merely an intrastate movement from the railroad yards to defendant's factory. As to the loaded cars it is contended that they did not enter interstate commerce until the bills of lading were delivered and waybills issued, after the time of the accident.

With respect to both the empty and loaded cars, the fact that bills of lading or waybills had not been issued is not conclusive of whether or not such cars were in interstate commerce. The shipment is still commerce and its character is determined by its origin and destination. (*New York, Chicago and St. Louis Railroad Co.* v. *Slater,* 23 Fed. 2d 777; *Grand Trunk Western Railroad Co.* v. *Boylen,* 81 Fed. 2d. 91; *Pitman* v. *Yazoo & Mississippi Valley Railroad Co.* 171 Miss. 799, 150 So. 547.) That no bills of lading had been issued on the cars here under consideration is thus immaterial.

The reasonable inference from the circumstances that plaintiff ordered specific type cars, which were to be spotted at factory gates where they would be loaded with predetermined merchandise, and from the fact that the cars were ultimately delivered to an out-of-State destination to consignees who must necessarily have been determined prior to the loading of merchandise, is that the initial movement of empty cars was a step in the movement of the cars to their destination in another state. The intended interstate transportation here, whereof the switching was a part, was sufficient to characterize the entire movement. (*Grand Trunk Western Railroad Co.* v. *Boylen,* 81 Fed. 2d 91. Preparatory movements of empty cars to a freight

house for the purpose of loading is so necessary an incident to, for the purpose of furthering, and so closely connected with, the movement of the same cars when loaded, as to be a part of the interstate movement. (*LaLone* v. *Terminal Railway Co.* 316 Mo. 835, 293 S.W. 379; *Aldread* v. *Northern Pacific Railway Co.* 93 Wash. 209, 160 Pac. 429.) Here the delivery of the empty cars to defendant's factory was the first step of an unbroken process of moving the cars to their ultimate interstate destination. The action of the switching crew in entering track 7 to remove the loaded cars was a further step in continuing those cars to their destination. The determining circumstance is that the movements were but steps in the transportation of the cargoes to their destinations in another State. (*Philadelphia and Reading Railway Co.* v. *Hancock,* 253 U.S. 284; *Mitchell* v. *Louisville and Nashville Railroad Co.* 375 Ill. 545.) The conclusion of the trial court that the parties were engaged in interstate commerce as a matter of law was correct.

The remaining grounds on which defendant urges reversal are: (1) That the trial court improperly excluded evidence of a covenant not to sue, entered into by plaintiff and the Elgin, Joliet and Eastern Railway; (2) that the plaintiff was guilty of contributory negligence as a matter of law, and (3) that the court erred in instructing the jury. As to the first of these, the record shows that plaintiff, for a consideration of $3000, entered into a covenant not to sue his employer, the railway company. The facts concerning this settlement were stipulated outside the presence of the jury, and on offer of the defendant the court refused to allow any consideration of the matter to be submitted to the jury. Defendant contends this was error, and that it had the right to show that the $3000 should be deducted from the amount of damages. This contention is based largely on cases wherein the principal of contribution has been discussed as to joint tort-feasors. The railroad here

was not joined as a tort-feasor, nor is there any showing that it was. This fact, together with the possible liability which could accrue to the railroad under the Federal Employer's Liability Act, leads to the conclusion that the payment of $3000 for a covenant not to sue was a transaction entirely separate and unconnected with this proceeding to determine defendant's liability under the common law. The trial court correctly excluded evidence of this payment from the jury.

The next contention of defendant is that plaintiff was guilty of contributory negligence as a matter of law. Whether a plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury to decide under proper instructions. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. (*Ziraldo* v. *Lynch Co.* 365 Ill. 197; *Thomas* v. *Buchanan,* 357 Ill. 270.) It would serve no useful purpose to fully detail the evidence upon which this contention is made and met, inasmuch as those facts are fully detailed in the opinion of the Appellate Court. (331 Ill. App. 178.) The jury made a special finding that plaintiff was not guilty of contributory negligence, in which finding the Appellate Court concurred. From our examination of the evidence, we are of the opinion that the finding of the jury was not against the manifest weight of the evidence, and its verdict will not be disturbed. That they did not construe the facts as urged by defendant does not render their finding unreasonable.

Defendant's final objection goes to instruction No. 14 submitted to the jury on behalf of the plaintiff, as follows: "If you believe from the evidence that any witness in this case has knowingly and wilfully sworn falsely on this trial to any matter material to the issues in this case, as elsewhere defined in these instructions, then you are at liberty to disregard the entire testimony of such witness,

except in so far as it has been corroborated—if you find it has been corroborated—by other credible evidence or by facts and circumstances proved on the trial."

This instruction, with the exception of the phrase "as elsewhere defined in these instructions," is substantially the same as the instructions which were condemned by this court in *People* v. *Arcabascio*, 395 Ill. 487; *People* v. *Wells*, 380 Ill. 347; *People* v. *Flynn*, 378 Ill. 351, and other cases, for the reason that it leaves to the jury the determination of what are the material facts. In the *Flynn* and *Wells* cases, the instructions were clearly bad, for it did not appear that the material issues were anywhere defined in the other instructions given. In the *Arcabascio case*, it was urged that nine of the accompanying instructions presented the material facts and defined all the essential elements of the crime with which the defendant there was charged, and that the giving of the instruction did not, in those circumstances, constitute error. We held there that because of the closeness of the facts of that case, and because the accompanying instructions did not clearly and precisely set out the material issues so as to free the jury of the burden and confusion of determining them, the giving of the instruction there was reversible error. We further expressly stated that we adhered to the language of the *Wells case* which restated the rule that the giving of such an instruction did not constitute reversible error if the other instructions defined the material facts or essential elements of the proceeding. See, also, *People* v. *McGrane*, 336 Ill. 404; *People* v. *Hartwell*, 341 Ill. 155.

In the instant case the facts are not as close as those of the *Arcabascio case*. Here, too, the instruction complained of specifically directed the jury's attention to the presence of definitions of material facts in accompanying instructions, which were found in plaintiff's instructions Nos. 6 and 7. Taking the instructions as a series, the jury was thus not at liberty to determine its own standard

of material facts or material allegations. (*People* v. *Lynn*, 387 Ill. 549; *People* v. *Machul*, 387 Ill. 556.) Under the facts of the case we cannot say that the jury was confused or misled by instruction No. 14, and, while we consider this type of instruction to be highly unsatisfactory, it did not in this circumstance constitute reversible error.

The judgment of the Appellate Court for the First District is therefore affirmed. *Judgment affirmed.*