# PHILADELPHIA, BALTIMORE & WASHINGTON RAILROAD COMPANY

## *vs.*

## ALFRED H. SMITH.*

*Railroad bridge repairers and Federal Employers' Liability Act. Demurrers: no exceptions necessary to Court's ruling on—.*

A railroad employee was injured while in a camp car, in which he was cooking dinner, and in which the railroad repair gang of carpenters lived while they were repairing bridges over the line of the railroad; the railroad was engaged both in inter-state and intrastate commerce: *Held,* that such employment was directly related to interstate commerce, and that the injury of the employee came under the Federal Employer's Liability Act.
                                                             p. 353

A ruling of the Court upon a demurrer should appear on the face of the record, and it is unnecessary and irregular to make it the basis of an exception.                    p. 346

*Decided February 27th, 1918.*

Appeal from the Circuit Court for Caroline County. (ADKINS and HOPPER, JJ.)

The facts are stated in the opinion of the Court.

---

*On October 12th, 1918, on the petition of the appellants, the Supreme Court of the United States issued a writ of cer-tiorari to the Court of Appeals in this case.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Henry R. Lewis,* for the appellant.

*T. Alan Goldsborough,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment recovered by the appellee against the appellant in the Circuit Court for Caroline County under the Federal Employers' Liability Act.*

The original declaration contained several counts, to some of which, including the first count, the defendant demurred. The demurrer was overruled, but as all the counts except the first were subsequently stricken out on motion of the plaintiff before the case was submitted to the jury, the first count is the only one to be considered.

The ruling of the Court on the demurrer was made the ground of the first bill of exception. That ruling appears on the face of the record, and it was unnecessary and irregular to include it in the bill of exceptions; 2 *Poe's P. & P.,* section 312 and cases cited in note, and *Expressman's Assn.* v. *Hurlock,* 91 Md. p. 591. The only remaining exception is to the granting of the plaintiff's first and second prayers.

Apart from certain objections to the form of the declaration and plaintiff's first prayer, to which we shall hereafter refer, the important ground of this appeal is that the averments of the declaration and the evidence in the case do not bring the plaintiff within the provisions of the Act relied on.

The defendant, the Philadelphia, Baltimore & Washington Railroad Company, operated a branch line of its railroad from the town of Clayton, in the State of Delaware, to the town of Oxford, in the State of Maryland, over which it

*1908 (35 Stat.-at-L. 65, Ch. 149, U. S. Comp. Stat. 1909, page 1171).

P., B. & W. R. R. CO. vs. SMITH.        347

Md.]                    Opinion of the Court.

transported passengers and freight in interstate and intra-
state commerce. The plaintiff was employed by the defend-
ant as a "carpenter laborer," in connection with a gang of
bridge carpenters employed by the defendant in the repair of
its bridges and bridge abutments. The gang, including the
plaintiff, worked over the entire line of the defendant, and
were moved from point to point thereon, as the repair of the
bridges and bridge abutments of the defendant required, in
what was called a camp car, furnished and moved by the
defendant, in which they ate, slept and lived. The princi-
pal duties of the plaintiff were to take care of the camp car,
keep it clean, attend to the beds and prepare and cook the
meals for himself and the other members of the gang. On
the 23rd day of December, 1915, the bridge carpenters were
engaged in repairing a bridge abutment of the defendant on
its said line below Easton, Maryland, and the camp car was
on a side track of the defendant at Easton, where it had
been placed by the defendant, and was coupled at each end
to a car of the defendant. On the day named, and while the
plaintiff was engaged in the camp car in cooking dinner for
the bridge carpenters and himself, the engineer of a train
of the defendant, without any warning to the plaintiff, ran
the engine on the sidetrack and against the car to which the
camp car was coupled with such force that it threw the plain-
tiff over a chair and against the door of a clothes press,
inflicting the injuries for which he seeks to recover in this
case.

That the injury complained of was caused by the negli-
gence of the defendant seems to be conceded, but learned
counsel for the appellant earnestly insists that the plaintiff
was not at the time he was injured engaged in the interstate
commerce within the meaning of the Federal statute. Among
the cases he relies on are *McBain* v. *Northern Pac. Ry. Co.,*
160 Pac. Rep. 654; *Killes* v. *Great Northern Ry. Co.,* 161
Pac. Rep. 69; *Shanks* v. *Delaware & L. R. R. Co.,* 239 U. S.

556; *Chicago, B. & Q. R. R. Co.* v. *Harrington,* 211 U. S. 177, and *Delaware, L. & W. R. R. Co.* v. *Yurkonis,* 238 U. S. 444.

In *McBain's case,* the plaintiff at the time of his injury "was going from his caboose to the yard office to present a requisition for supplies needed upon the caboose whenever it should be called into service." But the train to which the caboose was to be attached had not been made up, and whether it would, when called into service, be attached to a train engaged in interstate or intrastate commerce had not been determined; and the Court therefore held that it did not appear that the plaintiff, at the time he was injured, was engaged in interstate commerce. In *Killes' case,* the plaintiff was injured while building a scaffold to be used by him in painting a freight shed; and the Court held that he was "not engaged in an act so directly and immediately connected with the interstate commerce as substantially to form a part thereof or necessarily incident thereto." In *Shanks' case,* the Court held, "where a railroad company, which is engaged in both interstate and intrastate transportation, conducts a machine shop for repairing locomotives used in such transportation, an employee is not engaged in interstate commerce while taking down and putting up fixtures in such machine shop." In *Harrington's case,* the Court said: "The switching crew of which Harrington was a member did not work outside of this State and was engaged, at the time of his death, in switching coal belonging to the defendant, and which had been standing on a storage track for some time, to the coal shed, where it was to be placed in bins or chutes and supplied, as needed, to locomotives of all classes, some of which were engaged or about to be engaged in interstate and others in intrastate traffic." After quoting the statement in *Shanks' case,* that "the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be

practically a part of it," the Court said further: "Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supplied in a convenient place from which it could be taken as required for use." In the *Yurkonis case,* the plaintiff was injured while he was preparing to mine coal in a mine or colliery owned by the defendant; and the Court said: "The injury happening when plaintiff was preparing to mine the coal was not an injury happening in interstate commerce and the defendant was not then carrying on interstate commerce."

The decisions referred to and relied on by the appellant rest upon the theory that the work in which the plaintiff was engaged was not so closely related to interstate commerce as to be practically a part of it, and are readily distinguished from the case at bar. Here the bridge carpenters were employed in repairing the bridges of the defendant, which were necessary for the maintenance of its road and the conduct of interstate commerce in which the defendant was then engaged. The work done by the plaintiff, and for which he was employed by the defendant, was in furtherance and in aid of the work performed by the carpenters. He was a member of the gang and subject to the control of the boss of the gang, and was performing his duties on the property of the defendant and in a car furnished by the defendant as one of the instrumentalities engaged in the maintenance of its road, and we think the case falls clearly within the reasoning and principle applied in *Pedersen* v. *Del., L. & West. R. R. Co.,* 229 U. S. 146. In that case the Court said: "The defendant was operating a railroad for the transportation of passengers and freight in interstate and intrastate commerce, and the plaintiff was an ironworker employed by the defendant in the alteration and repair of some of its bridges and tracks at or near Hoboken, New Jersey. On the afternoon of his injury the plaintiff and another employee, acting under the direction of their foreman, were carrying from a

tool car to a bridge, known as the Duffield Bridge, some bolts or rivets which were to be used by them that night or very early the next morning in 'repairing that bridge,' the repair to consist in taking out an existing girder and inserting a new one. The bridge could be reached only by passing over an intervening temporary bridge at James avenue. These bridges were being regularly used in both interstate and intrastate commerce. While the plaintiff was carrying a sack of bolts or rivets over the James Avenue Bridge, on his way to the Duffield Bridge, he was run down and injured by an intrastate passenger train, of the approach of which its engineer negligently failed to give any warning.

"The Circuit Court ruled that an injury resulting from the negligence of a co-employee engaged in intrastate commerce was not within the terms of the Federal Act, and the Circuit Court of Appeals, although disapproving that ruling, held that under the evidence it could not be said that the plaintiff was employed in interstate commerce and therefore he was not entitled to recover under the Act.

"Considering the terms of the statute, there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce; but it is not essential, where the causal negligence is that of a co-employee, that he also be employed in such commerce, for, if the other conditions be present, the statute gives a right of recovery for injury or death resulting from the negligence 'of *any* of the * * * employees of such carrier,' and this includes an employee engaged in intrastate commerce. * * *

"That the defendant was engaged in interstate commerce is conceded, and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of interstate commerce in which the defendant was

engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reason unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment,' used in interstate commerce. But, independently of the statute, we are of the opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? * * * Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such.

"True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its

repair or in keeping it in suitable condition for use from being an employment interstate commerce.

"The point is made that the plaintiff was not at the time of his injury engaged in removing the old girder and inserting the new one, but was merely carrying to the place where the work was to be done some of the materials to be used therein. We think there is no merit in this. It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce."

Among the cases cited by the Court in *Pedersen's case* is the case of *Johnson* v. *Southern Pac. Ry. Co.*, 196 U. S. 1, where the Supreme Court held that a dining car while on a sidetrack awaiting the arrival of a passenger train to which it was to be attached was engaged in interstate commerce within the meaning of a statute requiring cars so engaged to be equipped with automatic couplers. In reference to the argument that the dining car could not be said to be engaged in commerce while on the sidetrack, the Court there said: "Confessedly this dining car was under the control of Congress while in the act of making its interstate journey, and in our judgment it was equally so when waiting for the train to be made up for the next trip." *Pedersen's case* is cited and approved in a number of the later decisions of the Supreme Court. *Shanks* v. *Del., L. & W. R. R. Co.*, *supra;* *N. Y. Central R. R. Co.* v. *White*, 243 U. S. 188, and *Southern Ry. Co.* v. *Puckett*, 244 U. S. 571. In the case of *Oliver* v. *Northern Pac. Ry. Co.*, 196 Fed. 432, the Court said, in reference to a Pullman car porter, who was employed by the railway company: "Persons employed as the deceased was come within the spirit of the statute, and those dependent on them for support should not be denied the protection it affords." And in *Robinson* v. *B. & O. R. R. Co.*, 237 U. S.

84, it seems to have been conceded that if the Pullman car porter had been employed by the railroad company he would have been entitled to the benefit of the Act as employed in interstate commerce. In the case of *B. & O. R. R. Co.* v. *Whitacre,* 124 Md. 411 (affirmed in 242 U. S. 169), where the plaintiff, who was employed by the railroad company as a brakeman, was injured while hunting a tool boy to get a tin cup for the use of the crew, this Court held that at the time of the accident he was engaged in interstate commerce, and, after referring to the case of *N. Car. R. R. Co.* v. *Zachary,* 232 U. S. 248, said: "Certainly the act of the fireman in going to his boarding house was no more an act connected with interstate commerce than was the act of Whitacre in hunting for a tool boy in order to obtain a tin cup for the use of the crew on its trip."

If the plaintiff had, through the negligence of the defendant, sustained the injuries complained of while he and the other members of the gang were being transported in the camp car over the defendant's line from a point in Delaware to a point in Maryland to repair a bridge in the latter State, his right to recover under the Federal Act could not have been questioned under the decisions referred to and many others that might be cited. How, then, can the fact that the camp car was temporarily located on a siding of the defendant in Maryland, while the carpenters were repairing a bridge there, before being moved to some other point on the line, perhaps in Delaware, for the same purpose, alter the relations of the work in which the plaintiff was employed to interstate commerce? The camp car, plaintiff and carpenters were, at the time of the injury, employed by the defendant in the repair of its road, which was essentially and directly related to the interstate commerce in which the defendant was engaged, and we see no good reason why the plaintiff under the circumstances should be denied the protection of the Act relied on.

In reference to the declaration, the appellant further contends that it does not allege that the plaintiff was in the camp car at the time he was injured, but we do not think the *narr.* is open to that criticism. It avers that the principal work assigned to the plaintiff "was to take care of the aforesaid car in which he and the other employees of the defendant (bridge carpenters) ate and slept, to keep it clean, to make the beds, to buy the food and prepare and cook it"; that at the time he was injured he "was cooking dinner for himself and the other employees of the defendant as aforesaid," and that as a result of the collision between the engine and the car to which the camp car was coupled he was thrown "some ten feet against the door casing and partition," and sustained the injuries of which he complains.

The objections to the plaintiff's first prayer are that it was misleading in that it required the jury to find facts that were not necessary to entitle the plaintiff to recover, and omitted certain other facts which would have justified the jury in bringing in a verdict different from the one rendered. In regard to the first objection it is only necessary to say that the defendant has no reason to complain that the prayer imposed on the plaintiff a burden he was not required to assume. The facts claimed to have been omitted from the prayer are that the camp car had been on the siding for two or three weeks prior to the day of the injury, and that the defendant was engaged in both intrastate and interstate commerce. This objection is disposed of by what was said by the Court in *Pedersen's case, supra,* and *Oliver's case, supra.*

No objection was urged to the plaintiff's second prayer, which relates to the measure of damages and is in the usual form, and as we find no errors in the rulings of the Court below, the judgment must be affirmed.

*Judgment affirmed, with costs.*